## Case No. 21-7015

In the United States Court of Appeals
for the Tenth Circuit

**Joseph Z. Womble,**
*Plaintiff-Appellant,*

v.

**Jerry Chrisman, Warden; and Tommy Sharp,
Deputy Warden, Mack Alford Correctional Center,**
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Oklahoma
Case No. 6:14-cv-00385-JFH-SPS
The Honorable John F. Heil, III

## Opening Brief

### *Oral Argument Requested*

Julian R. Ellis, Jr.
Bridget C. DuPey
Brownstein Hyatt
  Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
(303) 223-1100
jellis@bhfs.com;
bdupey@bhfs.com

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**.................................................................iv

**STATEMENT OF PRIOR OR RELATED APPEALS** ........................1

**STATEMENT OF JURISDICTION** ......................................................1

**STATEMENT OF THE ISSUES PRESENTED** ................................2

**STATEMENT OF THE CASE**................................................................3

   I.   Factual Background .............................................................4

       A.   Additional inmates transferred to the MACC ...........................4

       B.   Defendants Chrisman and Sharp ordered the rationing of food at the MACC ...................................................5

       C.   Facilities at the MACC were overwhelmed and failing because of the excess inmates ......................................7

       D.   Womble exhausted his administrative remedies.....................8

  II.   Procedural Background.....................................................14

**SUMMARY OF THE ARGUMENT** ....................................................18

**STANDARDS OF REVIEW** ................................................................21

**ARGUMENT** .........................................................................................23

   I.   Defendants Waived—or At Least Forfeited—Their Exhaustion Defense By First Raising the Defense Five Years Into the Litigation ........................................23

       A.   Defendants intentionally relinquished their exhaustion defense by forgoing the defense and proceeding straightaway to the merits ...................................26

       B.   But even so, Defendants forfeited their exhaustion defense by waiting years and an entire round of appeals before raising the defense .........................................28

# TABLE OF CONTENTS (con't)

II. Womble Exhausted the Available Administrative Remedies By Repeatedly Grieving the Problems Related to the Overcrowded Facilities.......................................................... 32

    A.   Womble exhausted his administrative remedies by raising Defendants' non-response with the ARA consistent with DOC policy...................................................... 33

    B.   If DOC policy required more of Womble, the policy is prohibitively opaque and confusing so that any administrative remedy was unavailable................................. 40

III. Alternatively, the District Court Should Have Ordered Limited Discovery on Whether Problems With Overcrowding Are Non-Grievable Issues ............................................... 42

**CONCLUSION**......................................................................... 46

**STATEMENT REGARDING ORAL ARGUMENT** ............................ 47

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**................. 48

**CERTIFICATE OF SERVICE** ............................................................. 49

**ATTACHMENTS**

    1 - Order (Doc. 113)

    2 - Final Judgment (Doc. 114)

# TABLE OF AUTHORITIES

**Page(s)**

### *Cases*

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...................................................................... 22, 23

*Anderson v. XYZ Corr. Health Servs., Inc.,*
407 F.3d 674 (4th Cir. 2005)............................................................ 24

*Arbaugh v. Y & H Corp.,*
546 U.S. 500 (2006).......................................................................... 24

*Bargher v. White,*
928 F.3d 439 (5th Cir. 2019)............................................................ 31

*Baughman v. Harless,*
142 F. App'x 354 (10th Cir. 2005).................................................... 40

*Beaudry v. Corr. Corp. of Am.,*
331 F.3d 1164 (10th Cir. 2003)........................................................ 25

*Booth v. Churner,*
532 U.S. 731 (2001).......................................................................... 40

*Brooks v. Warden,*
706 F. App'x 965 (11th Cir. 2017)............................................... 25, 30

*Brown v. Hartshorne Pub. Sch. Dist. No. 1,*
926 F.2d 959 (10th Cir. 1991).......................................................... 31

*Burnett v. Jones,*
437 F. App'x 736 (10th Cir. 2011).................................................... 41

*Cannon v. Mason,*
340 F. App'x 495 (10th Cir. 2009).................................................... 39

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).......................................................................... 22

*Cerveny v. Aventis, Inc.,*
855 F.3d 1091 (10th Cir. 2017)............................................. 22, 42, 43

# TABLE OF AUTHORITIES (con't)

*Daley v. Lappin,*
　555 F. App'x 161 (3d Cir. 2014) ........................................................ 25

*Davis v. Fort Bend Cnty.,*
　893 F.3d 300 (5th Cir. 2018) ................................................ 28, 28–29

*Dunbar v. Prelesnik,*
　2016 WL 11618615 (6th Cir. Oct. 27, 2016) ...................................... 29

*Eberhart v. United States,*
　546 U.S. 12 (2005) ...................................................................... 24, 25

*Fort Bend Cnty. v. Davis,*
　139 S. Ct. 1843 (2019) ................................................ 24, 25, 28, 29

*Foulk v. Charrier,*
　262 F.3d 687 (8th Cir. 2001) .......................................................... 25

*Gray v. Sorrels,*
　818 F. App'x 787 (10th Cir. 2020) .................................................. 25

*Handberry v. Thompson,*
　446 F.3d 335 (2d Cir. 2006) ...................................................... 27–28

*Jernigan v. Stuchell,*
　304 F.3d 1030 (10th Cir. 2002) ...................................................... 41

*Johnson v. Garrison,*
　805 F. App'x 589 (10th Cir. 2020) .................................................. 31

*Johnson v. Testman,*
　380 F.3d 691 (2d Cir. 2004) ...................................................... 25, 30

*Jones v. Bock,*
　549 U.S. 199 (2007) .............................................................. 24, 25, 39

*Lincoln v. BNSF Ry. Co.,*
　900 F.3d 1166 (10th Cir. 2018) ...................................................... 25

*Little v. Jones,*
　607 F.3d 1245 (10th Cir. 2010) .................................................. 22, 41

# TABLE OF AUTHORITIES (con't)

*Lyon v. Vande Krol*,
   305 F.3d 806 (8th Cir. 2002) ............................................................. 41

*Marquez v. Cable One, Inc.*,
   463 F.3d 1118 (10th Cir. 2006) ......................................................... 29

*Martinez v. Aaron*,
   570 F.2d 317 (10th Cir. 1978) ........................................................... 14

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) ........................................................................... 32

*Modrowski v. Pigatto*,
   712 F.3d 1166 (7th Cir. 2013) ........................................................... 29

*Norton v. The City of Marietta*,
   432 F.3d 1145 (10th Cir. 2005) ..................................................... 31–32

*Patty Precision v. Brown & Sharpe Mfg. Co.*,
   742 F.2d 1260 (10th Cir. 1984) .................................................... 22, 23

*Perez v. Wis. Dep't of Corr.*,
   182 F.3d 532 (7th Cir. 1999) ............................................................. 25

*Richison v. Ernest Grp., Inc.*,
   634 F.3d 1123 (10th Cir. 2011) ......................................................... 26

*Rose v. Saginaw Cnty.*,
   232 F.R.D. 267 (E.D. Mich. 2005) ..................................................... 30

*Ross v. Blake*,
   136 S. Ct. 1850 (2016) ....................................................................... 46

*Ross v. Cnty. of Bernalillo*,
   365 F.3d 1181 (10th Cir. 2004) ......................................................... 39

*Savage v. Fallin*,
   845 F. App'x 772 (10th Cir. 2021) ..................................................... 45

*Savage v. Fallin*,
   No. CIV-15-1194-HE, 2017 WL 9802856
   (W.D. Okla. Nov. 29, 2017) ............................................................... 44

vi

# TABLE OF AUTHORITIES (con't)

*Savage v. Fallin*,
   No. CIV-15-1194-HE, 2018 WL 1558281
   (W.D. Okla. Mar. 30, 2018)..................................................... 44, 44–45

*Savage v. Fallin*,
   No. CIV-15-1194-HE, 2019 WL 8108358
   (W.D. Okla. Aug. 19, 2019) ................................................................. 45

*Savage v. Fallin*,
   No. CIV-15-1194-HE, 2020 WL 292186
   (W.D. Okla. Jan. 21, 2020)................................................................... 45

*Smith v. Cheyenne Ret. Inv'rs L.P.*,
   904 F.3d 1159 (10th Cir. 2018).................................................... 21–22

*Snider v. Melindez*,
   199 F.3d 108 (2d Cir. 1999) ................................................................. 30

*Steele v. Federal Bureau of Prisons*,
   355 F.3d 1204 (10th Cir. 2003)............................................... 25, 30, 31

*Throupe v. Univ. of Denver*,
   988 F.3d 1243 (10th Cir. 2021) ........................................................... 22

*Trainor v. Apollo Metal Specialties, Inc.*,
   318 F.3d 976 (10th Cir. 2002) ............................................................. 22

*Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*,
   830 F.3d 1171 (10th Cir. 2016).............................................. 22–23, 23

*Tuckel v. Grover*,
   660 F.3d 1249 (10th Cir. 2011) .............................................. 33–34, 40

*Underwood v. Wilson*,
   151 F.3d 292 (5th Cir. 1998).............................................................. 25

*United States v. Alam*,
   960 F.3d 831 (6th Cir. 2020)............................................................... 24

*Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*,
   616 F.3d 1086 (10th Cir. 2010)........................................................... 42

# TABLE OF AUTHORITIES (con't)

*Womble v. Chrisman,*
    770 F. App'x 918 (10th Cir. 2019)......................1, 16, 16–17, 23–24, 27

*Womble v. Chrisman,*
    No. 15-7066 (10th Cir. Jan. 21, 2016) .................................................. 1

*Womble v. Harvanek,*
    739 F. App'x 470 (10th Cir. 2017)........................................................ 1

*Wood v. Milyard,*
    566 U.S. 463 (2012).............................................................................26

*Woodford v. Ngo,*
    548 U.S. 81 (2006).......................................................... 24, 25, 32, 33

### Constitutional Provision

U.S. Const. amend. VIII.......................................................................... 19

### Statutes

28 U.S.C. § 1291 .....................................................................................2

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1343(a)(3).............................................................................1

42 U.S.C. § 1997e(a) ..............................................................................24

42 U.S.C. § 1983 ................................................................. 1, 16, 26, 27

### Rules

Federal Rule of Civil Procedure 12(a)(1)(A) ..........................................29

Federal Rule of Civil Procedure 56(a)...............................................21, 22

Federal Rule of Civil Procedure 56(d)...................................3, 22, 23, 47

## STATEMENT OF PRIOR OR RELATED APPEALS

This is Joseph Womble's third appeal since filing this case in 2014. Womble first appealed the U.S. District Court for the Eastern District of Oklahoma's order dismissing Defendants Mary Fallin, Robert Patton, and David Parker. The Court dismissed the appeal for lack of prosecution. *Womble v. Chrisman*, No. 15-7066, order at 1 (10th Cir. Jan. 21, 2016). Womble next appealed the district court's order dismissing his amended complaint. After appointing pro bono counsel and ordering supplemental briefing on Womble's food-deprivation claim, the Court reversed the dismissal order in *Womble v. Chrisman*, 770 F. App'x 918 (10th Cir. 2019) (unpublished), and remanded the case.

In a separate but related case, Womble sued the current warden of the Mack Alford Correctional Center (or MACC), Kameron Harvanek, under 42 U.S.C. § 1983, for unconstitutional conditions of confinement. *See Womble v. Harvanek*, No. CIV 16-328-RAW-SPS (E.D. Okla.). Womble appealed the district court's order dismissing his complaint, and the Court reversed the dismissal order in *Womble v. Harvanek*, 739 F. App'x 470 (10th Cir. 2017) (unpublished).

## STATEMENT OF JURISDICTION

Womble filed his pro se amended complaint under 42 U.S.C. § 1983, alleging constitutional deprivations while an inmate in the custody of the Oklahoma Department of Corrections (or DOC). The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3).

This Court has jurisdiction over Womble's appeal under 28 U.S.C. § 1291. The district court granted summary judgment to Defendants and entered final judgment on March 25, 2021. Womble timely filed his notice of appeal on April 20, 2021.

## STATEMENT OF THE ISSUES PRESENTED

1.  Womble filed this case in 2014. Yet, Defendants Chrisman and Sharp did not mention exhaustion until 2019. In the intervening years, the government filed a special report and Defendants appeared before the district court and filed a motion to dismiss/motion for summary judgment. Defendants also filed multiple briefs before this Court and participated in oral argument. It was only *after* the Court held Womble adequately pled two constitutional claims against Defendants that they first argued Womble failed to exhaust his administrative remedies.

*Did Defendants waive or forfeit their exhaustion defense?*

2.  Between May and August 2014, Womble filed at least seven requests and grievances raising problems with overcrowding after the inmate population at the MACC swelled from less than 800 to over 900. These dire problems included the lack of nutritionally adequate food (because of a rationing policy) and failing facilities (because of crushing use). When Defendant Chrisman failed to respond to Womble's grievance in August 2014, Womble raised the non-response with the Administrative Review Authority (or ARA), per DOC policy. The ARA

denied Womble's request, because it said he could not appeal a non-response. Womble sued in federal court four days later.

*Did the district court err by finding Womble failed to exhaust the available administrative remedies?*

**3.** In response to Defendants Chrisman and Sharp's second pre-answer motion for summary judgment, Womble's counsel filed a declaration under Federal Rule of Civil Procedure 56(d). That declaration outlined the discovery needed to respond to the availability of administrative remedies, including whether the DOC had a no-grievance policy for issues related to overcrowding, which a federal court in Oklahoma confirmed in multiple opinions. The district court, however, did not address or acknowledge the Rule 56(d) request.

*Did the district court err by granting summary judgment to Defendants on their exhaustion defense before addressing counsel's Rule 56(d) declaration?*

## STATEMENT OF THE CASE

Joseph Womble sued in September 2014, to correct deplorable conditions and inhumane treatment at the Mack Alford Correctional Center, a correctional facility operated by the Oklahoma Department of Corrections. Above all, Womble's lawsuit was an urgent plea to the courts to redress multiple constitutional deprivations. These included the denial of constitutional minimums: nutritionally adequate food and

shelter that did not cause degeneration or threaten the mental and physical well-being of those under the state's care.

Although this appeal is limited to Defendants' exhaustion defense, the severity of Womble's constitutional claims, which are detailed below, explain Womble's resolve in seeking administrative relief in the summer of 2014. Indeed, if Defendants and the government would have meaningfully responded to Womble's administrative requests, this litigation might not have been. But they didn't respond. And, given Womble's diligence, it is clear Womble felt the conditions were severe enough, and Defendants' willingness to correct course doubtful enough, to warrant immediate court intervention.

But, nearly seven years into this case, Womble is no further along the civil litigation continuum than when he started. He has opposed three dispositive motions, prosecuted two appeals to this Court (one successfully), and satisfied the responsibilities otherwise required of a civil claimant. And this is all before Defendants filed an answer—which they still have not done. This third appeal represents Womble's commitment to finally achieving his day in court.

## I.   Factual Background

### A.   Additional inmates transferred to the MACC.

Between 2014 and 2016, Womble was an inmate at the MACC. (App. Vol. 1 at 310, ¶ 10.) In May 2014, 128 inmates were transferred to the MACC, causing the inmate population to increase from less than

800 to well over 900. (*Id.* ¶ 12.) Womble's unit increased 32%—from 100 inmates, which is capacity, to 132 inmates. (*Id.*) The MACC could not handle the surge in inmate population. (*Id.*) So, Defendants Chrisman and Sharp constructed 32 temporary bunks. (*Id.*) The new bunks were placed all over the unit: eighteen in the dayroom, eight in the library, and six in the TV room. (*Id.*) These temporary bunks were surrounded by 50 cells housing two inmates each. (*Id.*)

**B.    Defendants Chrisman and Sharp ordered the rationing of food at the MACC.**

After the new inmates were transferred to the MACC, Defendants instituted policies that significantly degraded the quantity and quality of food served to inmates. (*Id.* at 314, ¶ 31.) Defendants and food services maintained a master menu. (*Id.*) The quantity of food served under the master menu was nutritionally and constitutionally adequate. (*Id.*) But, between May 2014 to August 2016, the food was not served consistent with that menu. (*Id.*) Rather, when the inmate population increased, Defendants instructed Donna Vitoski, the MACC's then-food services manager, that the food-service budget would not be increased, and that food portions were to be reduced. (*Id.* ¶ 32.)

Womble first noticed the reduced portions in June 2014. (*Id.* ¶ 33.) Inmates were given cafeteria-style trays for meals. (*Id.*) These trays were segregated into five slots, three across the top of the tray and two larger slots on the bottom. (*Id.*) In early June 2014, Womble noticed the

portion sizes started shrinking and tray slots started being skipped altogether. (*Id.*) Inmates called this latter practice "blanking the slots." (*Id.*) Inmates were also served spoiled and contaminated meat, fruit, and milk. (*Id.* at 316, ¶ 37.) In that regard, Womble observed flies, cockroaches, and rodents in the kitchen and food-preparation areas, which health-and-safety inspections confirmed. (*Id.*)

As detailed in the exhaustion subsection below, Defendants were notified their policies were causing food portions to fall below the constitutional minimum. (*Id.* ¶ 38.) Defendant Sharp told Womble "we will do nothing about the overcrowding, and you should be grateful you even get food." (*Id.*) In other conversations with Defendants, they implied that they "d[id] not have the budget to fix these problems." (*Id.*) Womble also spoke with prison staff about the rationing policies. (*See id.* ¶ 39.) The rationing caused staff to be concerned about safety, including the increased risk of fights and riots. (*Id.*) In fact, staff would sometimes allow inmates to go through the food line twice because of these concerns. (*Id.*) Some captains and lieutenants who oversaw food delivery and food services even complained to Defendants and warned that the policies were causing inmate hunger. (*Id.*) But Defendants ignored these concerns and instructed Womble and others that "it was going to be this way for a while." (*Id.*)

### C.     Facilities at the MACC were overwhelmed and failing because of the excess inmates.

To address the shortage of bathroom facilities in Womble's unit, Defendants converted three of the unit's 50 cells into bathrooms for the 32 new inmates, leaving three bathrooms for 32 inmates. (*Id.* at 317, ¶ 43.) The unit also had only 11 showers for 132 inmates. (*Id.* ¶ 44.)

Because Defendants provided limited bathrooms and showers to the inmates on the unit, the toilets and showers were often overwhelmed, causing them to be "out of order." (*Id.* ¶ 46.) The facilities suffered from overflowing toilets, garbage and exposed wiring, and shower drains that often clogged. (*Id.*) These problems were either not fixed or maintenance was delayed. (*Id.*) Even when maintenance repaired the issues, the toilets and showers quickly failed again. (*Id.*)

Womble had to use the bathroom facilities when they were flooded because of overflowing toilets. (*Id.* at 318, ¶ 48.) The overflowing toilets regularly caused other inmates' urine and feces to flow onto the floor, which Womble had to stand in to use the bathroom. (*Id.*) Additionally, in response to the rising number of fights in the temporary bunks, prison staff would secure unruly inmates in two of the three cell-converted bathrooms. (*Id.* ¶ 51.) When this happened, Womble, along with 31 other inmates, had to share a single bathroom. (*Id.*)

Defendants were constantly made aware of the many problems with the facilities at the MACC, including the failing bathroom and

shower facilities in Womble's unit. (*Id*. at 319, ¶ 56.) Womble even told Defendants he was being exposed to feces. (*Id*. at 317, ¶ 49.) Their response to him: "[N]othing can be done. This is a permanent situation. You'll just have to do your time." (*Id*.)

In July 2016, there was a prison-wide gang fight at the MACC. (*Id*. at 311, ¶ 15.) One inmate was killed and others were injured. (*Id*.) After the fight, inmates were pulled from the temporary bunks and were triple-celled. (*Id*.) At the end of August 2016, officials shut down the temporary bunks at the MACC and sent inmates to other Oklahoma state prisons. (*Id*.) Womble was moved to the North Fork Correctional Center in Sayre, Oklahoma, that month. (*Id*.)

## D.     Womble exhausted his administrative remedies.

***The DOC's grievance policy.*** The applicable DOC grievance policy is dated January 29, 2013. (*See generally id*. at 192.) That policy requires a four-step process for administrative exhaustion of inmate claims. *First*, the inmate must try to resolve the complaint by informally raising the matter with staff. (*Id*. at 196.) *Second*, if that proves unsuccessful, the inmate submits a request to staff (RTS). (*Id*. at 197–98.) *Third*, if the matter remains unresolved, the inmate may file an "Offender Grievance Report Form" with the appropriate "reviewing authority." (*Id*. at 198–200.) The reviewing authority is "[t]he facility head or facility correctional health services administrator (CHSA) where the incident occurred and to whom the grievance is first

8

submitted." (*Id.* at 193.) *Fourth*, once the inmate receives a response to

his grievance, he may appeal the decision to the administrative review

authority or to the chief medical officer. (*Id.* at 202–04.)

Relevant here, subsection V.C.4 of the DOC policy outlines the

process for raising the *non-response* of a grievance.

> 4.    If there has been no response by the reviewing authority within 30 calendar days of submission, the offender may send a grievance to the administrative review authority or chief medical officer with evidence of submitting the grievance to the proper reviewing authority. The grievance submitted to the administrative review authority or chief medical officer may assert only that the offender's grievance was not answered.

(*Id.* at 200.) If the reviewing authority fails to respond to the inmate's

grievance within 30 days, the inmate may send the grievance to the

ARA with evidence of submitting the grievance to the reviewing

authority. (*Id.*) The inmate, however, may only raise with the ARA that

his grievance was not answered. (*Id.*) Subsection V.C.4 does not state

which form the inmate must use to raise a non-response with the ARA.

(*See id.*) Indeed, DOC policy only references two ARA-specific forms: the

Misconduct/Grievance Appeal Form to Administrative Review

Authority, and the Request to Submit a Misconduct/Grievance Appeal

Out of Time. (*Id.* at 210 (listing referenced forms).)

***Womble's exhaustion efforts.*** Between May and August 2014,

Womble brought up the MACC's overcrowding through the DOC's

grievance process, including grieving the lack of nutritionally adequate food and the overburdened and failing facilities.

On May 16, Womble filed an RTS with Defendant Sharp raising overcrowding and its effects. (*Id.* at 210.) Womble stated the "food being served falls below ACA [American Correctional Association] nutritional standards" and the "bathrooms and shower facilities are deficient." (*Id.* at 322.) Womble did not receive a response to the May 16 RTS. (*Id.* at 311, ¶ 18.) Womble learned through the law library that this RTS was denied because it supposedly addressed more than one issue. (*Id.*)

On June 5, Womble filed another RTS with Defendant Sharp, this time raising one issue: a violation of the fire code. (*Id.* at 324.) Defendant Sharp returned the June 5 RTS because he said it wasn't specific enough and instructed Womble to "specifically state how [overcrowding] violates the 'fire code.'" (*Id.*)

On July 3, Womble grieved the June 5 RTS with Defendant Chrisman, explaining: "The prison is very overcrowded. The lack of personal space is causing problems between inmates. Also, the food service is not providing enough food to each inmate because of the overcrowding." (*Id.* at 326.) Womble also noted "these issue[s] fall under <u>one</u> issue which is overcrowding. These requests were rejected for multiple issues being raised. But I am only attempting to raise one issue." (*Id.* at 326 (underline in original).) On July 7, Defendant Chrisman returned the July 3 grievance in a form response because he

10

said Womble did not attach the RTS "showing that [Womble] gave the appropriate staff an opportunity to *resolve* [his] complaint." (*Id.* at 328.)

On July 8, Womble filed a second grievance with Defendant Chrisman explaining that he re-raised his concerns with the inadequate food and failing prison facilities through a new RTS, dated July 8. (*Id.* at 330.) Defendant Chrisman returned the July 8 grievance on July 17 through another form response, instructing Womble how to grieve the non-response of an RTS. (*Id.* at 331.)

Womble directed his July 8 RTS to Defendant Sharp and raised the ongoing violations that he outlined in his May 16 and June 5 RTSs for a third time. (*Id.* at 333.) Despite Womble's repeated attempts to raise specific constitutional violations, Defendant Sharp claimed: "You still have not told me what law violations have occurred . . . . Be specific and I will address your issue." (*Id.*)

Womble grieved the July 8 RTS to Defendant Chrisman on August 8, and explained in exacting detail:

> This facility is overcrowded. The Supreme Court in Rhodes v. Wilson has said that while overcrowding by itself is not an 8th [A]mendment violation, rights infringed upon due to overcrowding are actionable. My right to nutritious food, airflow, and a health hab[ilitative] environment have been encroached upon by the stackin[g] of inmates in dayrooms, libraries, and TV rooms.

(*Id.* at 335–36.) Womble did not receive a response to his August 8 grievance from Defendant Chrisman.[1] (*Id.* at 313, ¶ 25.)

On August 25, Womble raised the non-response with the ARA.



---

[1] The government's special reports include a response from Defendant Chrisman to Womble's August 8 grievance. But Womble never received this response. (*Id.* ¶ 26.) The first time he saw the response was in the initial special report. (*Id.*)

(*Id.* at 338–39.) Womble also attached to this grievance appeal form a signed statement, consistent with DOC grievance policy, stating that he had filed an RTS with Defendant Sharp, received a response to the RTS, and filed a grievance with Defendant Chrisman, but did not receive a response to the grievance. (*Id.* at 339.)



On September 4, Womble received a form letter from the ARA stating: "**YOU CANNOT APPEAL A NON-RESPONSE. REFER TO**

**OP-090124 SECTION V.C. FOR GUIDANCE.**" (*Id.* at 340.) After the
ARA denied Womble relief through the grievance process, he sued in
federal court on September 8. (*Id.* at 314, ¶ 29.)

## II.    Procedural Background

Because of the alleged constitutional deprivations, and because
Defendants Chrisman and Sharp refused to redress the problems at the
MACC, Womble filed this § 1983 action in the U.S. District Court for
the Eastern District of Oklahoma. (*See generally* App. Vol. 1 at 13.)
Womble named six defendants in their individual and official capacities:
Mary Fallin (governor), Robert Patton (director of the DOC), David
Parker (deputy director of the DOC), Donna Vitoski (food services
manager), Chrisman, and Sharp. (*Id.* at 13–14.) Womble pled four
claims: (1) food deprivation; (2) failure to adequately screen new
inmates; (3) failure to parole eligible inmates; and (4) conditions of
confinement related to the overburdened and failing facilities. (*Id.* at 15,
17–20.) Womble sought injunctive relief and compensatory and punitive
damages. (*Id.* at 21.) Womble also asked for class action relief. (*Id.*)

Early in the case, the government moved to stay and for leave to
file a *Martinez*[2] report, which the district court granted. (*Id.* at 25.) On
January 30, 2015, the government filed its *Martinez* report. (*Id.* at 27.)
The narrative of the January 30 report outlined all of Womble's

---

[2] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (en banc).

14

relevant RTSs and grievances (*id.* at 29–30, 38), and the report writer attached the RTSs and grievances as support (*id.* at 51–63). That same day, Defendants Fallin, Patton, and Parker filed a motion to dismiss/motion for summary judgment. (*Id.* at 104.) These defendants raised five arguments: (1) the defendants were not persons under § 1983; (2) Womble failed to plead the defendants' personal participation; (3) the defendants were qualifiedly immune; (4) Womble failed to exhaust his administrative remedies; and (5) Womble failed to plead an ongoing constitutional deprivation to support injunctive relief. (*Id.* at 107–15.) The district court granted the motion, but did not address the defendants' exhaustion defense, nor did it reference Womble's attempts to exhaust. (*See generally id.* at 132.)

On November 19, 2015, Womble filed an amended complaint, naming only Defendants Chrisman, Sharp, and Vitoski.[3] (*Id.* at 136, 139.) At first, Womble pled claims for injunctive relief (official capacity claims) and damages (individual claims) against Defendants Chrisman and Sharp. (*Id.* at 21.) But Womble dropped his request for injunctive

---

[3] The U.S. Marshals Service first returned Defendants Chrisman's and Sharp's summons on December 8, 2015. (*Id.* at 145.) In response to Womble's motion for default judgment, the district court ordered Defendants to show cause why Womble's motion should not be granted. (*Id.*) After briefing, the district court directed new summons be issued to Defendants. (*Id.* at 146–47.) Service was perfected on Defendants on October 13, 2016. (*Id.* at 148, 151.) During this time, Womble settled and dismissed his claims against Defendant Vitoski. (*Id.* at 146.)

relief after he was moved to another facility, and Defendants Chrisman and Sharp left the MACC. Womble's amended complaint alleges three constitutional violations: (1) food deprivation; (2) failure to adequately screen new inmates; and (3) conditions of confinement related to the overburdened and failing facilities. (*Id.* at 137, 140–43.)

On October 27, 2016, Defendants Chrisman and Sharp filed their first motion to dismiss/motion for summary judgment.[4] (*Id.* at 154.) Similar to the other defendants' earlier motion, Defendants argued: (1) they were not persons under § 1983; (2) Womble failed to plead their personal participation; (3) they were qualifiedly immune; and (4) Womble's claim for injunctive relief was moot. (*Id.* at 156–61.) But, unlike the earlier motion, Defendants Chrisman and Sharp did not raise exhaustion. (*See generally id.* at 154.)

The district court granted Defendants' motion, finding Womble failed to plead personal participation. (*Id.* at 168–69.) Womble appealed, and this Court reversed the dismissal order in *Womble v. Chrisman*, 770 F. App'x 918 (10th Cir. 2019) (unpublished). For the food-deprivation claim, the Court determined that

> Womble alleged that he was continually served inadequate amounts of food, that he was served spoiled food on a regular basis, and that he became ill and lost 21 pounds between May 2014 and September 2015. . . . [W]e conclude that Mr. Womble

---

[4] Before the district court, Defendants stated they mistakenly titled their first motion as a combined "Motion to Dismiss/Motion for Summary Judgment." (App. Vol. 2 at 352 n.1.)

> has alleged a sufficiently serious deprivation to survive a
> motion to dismiss because the rationing lasted more than 16
> months, he lost 21 pounds, and he suffered from stomach
> pain, digestive damage, and vomiting.

*Id.* at 924–25. For Womble's inadequate-facilities claim, the Court

added, "Womble's allegations that he had to hold bowel movements and

that he was exposed to feces are enough at this stage to show a

sufficiently serious threat to his physical and mental wellbeing." *Id.* at

925. The Court remanded to the district court.

On remand, the government immediately moved to stay and for

leave to supplement its *Martinez* report, which the district court

granted. (App. Vol. 2 at 171.) On September 6, 2019, the government

filed its supplemental *Martinez* report. (*Id.* at 172.) The September 6

report did not reveal any new allegations about Womble's efforts to

exhaust, nor did it supplement the relevant exhaustion documents

(*compare id.* at 233–50, *with* App. Vol. 1 at 51–63).

On the same day the government filed its supplemental *Martinez*

report, Defendants Chrisman and Sharp filed a second motion for

summary judgment. (App. Vol. 2 at 251.) In this motion, Defendants

argued for the first time that Womble failed to exhaust the available

administrative remedies. (*Id.* at 261–65.) Defendants' exhaustion

argument was nearly identical to the argument the other defendants

raised four years before. (*Compare id.*, *with* App. Vol. 1 at 111–12.)

Womble opposed the motion. (App. Vol. 2 at 276.) Womble's counsel also filed a Rule 56(d) declaration. (*Id.* at 341.) The declaration outlined the discovery needed before the court could grant summary judgment on Defendants' exhaustion defense, including discovery on the availability of administrative remedies. (*Id.*) Separately, Womble moved to compel a discovery conference and for initial disclosures in response to Defendants' claim that Womble could begin discovery. (*Id.* at 362.) The court summarily denied that motion in a minute order. (*Id.* at 394.)

On March 24, 2021, the district court granted summary judgment to Defendants on their exhaustion defense. (*Id.* at 395.) The court did not address—or acknowledge—counsel's Rule 56(d) declaration. The court entered final judgment on March 25. (*Id.* at 402.)

Womble now appeals the order and final judgment.

## SUMMARY OF THE ARGUMENT

When the State of Oklahoma incarcerated Joseph Womble in 2011, it assumed responsibility to provide him with "the minimal civilized measures of life's necessities." Without question, upon conviction, the government may deprive a person of rights fundamental to liberty. But what's also true is the government may not deprive incarcerated persons of the essence of human dignity inherent to all people. To incarcerate, the government takes away from a person the means to provide for his own needs, the most important of which are food, clothing, shelter, medical care, and reasonable safety.

18

The merits of this case center on Defendants Chrisman and Sharp's denial of these constitutional minimums. To that, this Court has already concluded that Womble adequately pled two Eighth Amendment claims against Defendants for food deprivation and inadequate prison facilities during a period of overcrowding.

Yet, two years later, Womble is before the Court again, this time on what should have been a prefatory matter: exhaustion of administrative remedies. For years, Defendants have litigated this case, including filing a motion to dismiss/motion for summary judgment and defending an appeal before this Court, without disclosing their present belief that Womble failed to exhaust. Indeed, it was only *after* the Court determined that Womble adequately pled constitutional claims that Defendants first raised exhaustion—five years into this litigation.

**I.A.** The Prison Litigation Reform Act's exhaustion requirement is a non-jurisdictional, claim-processing rule subject to waiver and forfeiture. Early in the case, other defendants raised exhaustion in a motion to dismiss/motion for summary judgment. The district court bypassed that argument and dismissed the claims against these defendants on other grounds. Later, Defendants also filed a motion to dismiss/motion for summary judgment. Critically though, Defendants did not raise exhaustion; rather, they challenged the merits of Womble's allegations, while also arguing they were qualifiedly immune. Under

19

these circumstances, Defendants' decision to proceed straightaway to the merits constitutes waiver of their exhaustion defense.

**B.** In the least, Defendants forfeited their defense. As the U.S. Supreme Court recently affirmed, when a defendant waits years and an entire round of appeals before raising exhaustion, it is abundantly clear he forfeits his opportunity to argue exhaustion for the first time on remand. That's precisely what Defendants did here.

**II.A.** Even if Defendants' untimely exhaustion defense is considered, reversal is still warranted. Through no less than seven RTSs and grievances, Womble raised with Defendants the problems caused by overcrowding, including the quantity and quality of the food served and the overwhelmed and failing facilities at the MACC. Each time, Defendants refused to provide a meaningful response.

When Defendant Chrisman failed to respond to Womble's last grievance, Womble raised the non-response with the ARA, per DOC policy. The ARA denied Womble's request, instructing that he could not appeal the non-response of a grievance. Although this decision is irreconcilable with the DOC's grievance policy, which directs inmates to raise the non-response of a grievance with the ARA, the ARA's denial ended the administrative process. Having exhausted his administrative remedies, Womble sued in federal court days later.

**B.** If DOC policy required more of Womble, it is prohibitively opaque and confusing so that any administrative remedy was effectively

20

unavailable. Womble followed the DOC's limited direction on raising the non-response of a grievance and used the only ARA-specific form that could have applied. If the ARA believed the form of Womble's filing was incorrect, it should have said so. Instead, the ARA provided no direction other than circularly referring Womble back to the policy. On these facts, Defendant Chrisman's failure to respond, along with the ARA's interpretation of DOC policy to avoid ordering Defendant Chrisman to respond, rendered proper exhaustion unavailable.

**III.** Alternatively, the district court erred by granting summary judgment before addressing counsel's Rule 56(d) declaration. The declaration outlined the discovery necessary for Womble to show the unavailability of administrative remedies for his constitutional claims. This argument is supported by a federal district court's finding in another case that "problems caused by overcrowd[ing]" are "not an issue grievable to Oklahoma Department of Corrections." If the DOC had a no-grievance policy for problems related to overcrowding, no administrative remedy was available. Womble should have been allowed discovery before the district court granted summary judgment.

## STANDARDS OF REVIEW

***Rule 56(a) grants.*** The Court reviews the district court's grant of summary judgment de novo, applying the same Rule 56(a) standard.[5]

---

[5] The Court also "review[s] the district court's legal determination that a plaintiff has failed to exhaust [his] administrative remedies de

*Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021). The Court will grant summary judgment only if the movant shows there is no dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, Defendants have "both the initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). To meet their burden, Defendants had to "produc[e] affirmative evidence" establishing their exhaustion defense. *See id.* If Defendants failed to carry their initial burden of production, Womble did not have to produce any evidence. *Id.* If Defendants carried their burden, Womble needed only designate facts showing there was a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As the nonmoving party, the Court should resolve all reasonable inferences and doubts, and construe all evidence, in the light most favorable to Womble. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Rule 56(d) denials.** The Court reviews the district court's denial of a Rule 56(d) declaration for abuse of discretion. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). A request under Rule 56(d) "should be treated liberally," *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984), and "discovery is the norm

---

novo." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

prior to granting summary judgment," *Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016). In fact, "summary judgment should not be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Id.* (quoting *Anderson*, 477 U.S. at 25 n.5). And, when the district court altogether fails to exercise its discretion under Rule 56(d) before granting summary judgment, it commits reversible error. *Patty Precision*, 742 F.2d at 1265 ("[T]he trial judge must expressly rule on plaintiff's Rule 56(f) [now-Rule 56(d)] affidavit and give specific reasons for the grant or denial thereof.").

## ARGUMENT

### I. Defendants Waived—or At Least Forfeited—Their Exhaustion Defense By First Raising the Defense Five Years Into the Litigation.

Defendants Chrisman and Sharp litigated this case for years without reference to their present belief that Womble failed to exhaust his administrative remedies. During that time, the government filed a *Martinez* report, which outlined Womble's exhaustion efforts (App. Vol. 1 at 27); Defendants filed a motion to dismiss/motion for summary judgment, which leveled multiple arguments for dismissal, but not exhaustion (*id.* at 154); and Defendants filed briefs and participated in oral argument before this Court. It was not until this Court held Womble adequately pled two constitutional claims, *Womble v.*

23

*Chrisman*, 770 F. App'x 918, 924, 925 (10th Cir. 2019) (unpublished),
that Defendants raised exhaustion in a second motion for summary
judgment. (App. Vol. 2 at 251.) This is too late.

The Prison Litigation Reform Act (PLRA) requires prisoners to
exhaust "available" administrative remedies before filing a § 1983
action challenging prison conditions. 42 U.S.C. § 1997e(a). The U.S.
Supreme Court has made clear the PLRA's exhaustion requirement "is
not jurisdictional." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Instead, it
"is an affirmative defense" that defendants must plead and prove. *Jones
v. Bock*, 549 U.S. 199, 216 (2007). As Judge Sutton recently explained in
*United States v. Alam*, "The Supreme Court has worked over the last
decade or so to distinguish between jurisdictional rules (that bear on
the competence of courts to hear a claim) and non-jurisdictional
mandatory rules (that do not)." 960 F.3d 831, 833 (6th Cir. 2020) (citing
*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)).

The chief distinction between jurisdictional and non-jurisdictional
exhaustion rules is that non-jurisdictional rules may be waived or
forfeited "if the party asserting the rule waits too long to raise the
point." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting
*Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)). To be
sure, circuit courts apply this rule to the PLRA,[6] and the Supreme

---

[6] *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 679 (4th
Cir. 2005), *overruled on other grounds by Jones*, 549 U.S. at 216;

Court has said a claim-processing rule is only "'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Id.* (quoting *Eberhart*, 546 U.S. at 19).[7]

Not only did Defendants fail to preserve their exhaustion defense by first raising it five years into the litigation (forfeiture), but their litigation conduct proves they intentionally and knowingly relinquished the defense early in the litigation (waiver).

---

*Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999); *Underwood v. Wilson*, 151 F.3d 292, 294–95 (5th Cir. 1998), *overruled on other grounds by Woodford*, 548 U.S. at 101; *Brooks v. Warden*, 706 F. App'x 965, 969 (11th Cir. 2017) (unpublished); *Daley v. Lappin*, 555 F. App'x 161, 167 (3d Cir. 2014) (unpublished).

[7] Older cases from this Court interpreted "mandatory" differently. In *Steele v. Federal Bureau of Prisons*, the Court held exhaustion was a mandatory pleading requirement of the prisoner under the PLRA, rather than an affirmative defense, "because it cannot be waived." 355 F.3d 1204, 1209 (10th Cir. 2003) (citing *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1168 n.5 (10th Cir. 2003)). But the Supreme Court disagreed, and in *Jones* held that exhaustion is an affirmative defense. 549 U.S. at 216. Thus, cases relying on this Court's understanding of "mandatory" before the Supreme Court's decisions in *Jones* and *Fort Bend County* are stale. *Compare Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018) (recognizing non-jurisdictional exhaustion requirements are "defense[s] subject to waiver, estoppel, and equitable tolling"), *with Gray v. Sorrels*, 818 F. App'x 787, 791 (10th Cir. 2020) (unpublished) (citing pre-*Jones* cases and rejecting prisoner's argument that defendants waived their exhaustion defense because the "exhaustion requirement of § 1997e(a) is mandatory").

### A.    Defendants intentionally relinquished their exhaustion defense by forgoing the defense and proceeding straightaway to the merits.

A defendant waives an affirmative defense if he intentionally relinquishes or abandons the defense before the district court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011). And, while at times a district court *may* hear forfeited defenses (i.e., those "a party has merely failed to preserve"), it lacks authority to resurrect waived defenses that "a party has knowingly and intelligently relinquished." *See Wood v. Milyard*, 566 U.S. 463, 470 & n.4 (2012). Defendants' choice here constitutes waiver: they strategically elected to forgo their exhaustion defense and attack Womble's allegations on the merits—that is, until they lost in this Court.

Early in the case, three of the original six defendants—Defendants Fallin, Patton, and Parker—filed a motion to dismiss/motion for summary judgment. (App. Vol. 1 at 104.) These defendants raised five arguments: (1) the defendants were not persons under § 1983; (2) Womble failed to plead the defendants' personal participation; (3) the defendants were qualifiedly immune; (4) Womble failed to exhaust his administrative remedies; and (5) Womble failed to plead an ongoing constitutional deprivation to support injunctive relief. (*Id.* at 107–15.) In granting the defendants' motion, the district court did not mention the defendants' exhaustion defense, nor did the court reference Womble's repeated attempts to exhaust. (*See generally id.* at 132.)

Just over a year later, Defendants Chrisman and Sharp filed their first motion to dismiss/motion for summary judgment. (*Id.* at 154.) Like the other defendants, Defendants argued: (1) they were not persons under § 1983; (2) Womble failed to plead their personal participation; (3) they were qualifiedly immune; and (4) Womble's claim for injunctive relief was moot. (*Id.* at 156–61.) The two motions contain the same point headings, much of the same law and arguments, and were filed by the same counsel. (*Compare id.* at 104–16, *with id.* at 154–62.) In fact, the only meaningful difference between the motions is that Defendants omitted the exhaustion argument, likely because Womble had been transferred to another facility. (*See id.* at 161.)

The most logical view of Defendants' litigation conduct is that they intentionally and knowingly abandoned any exhaustion defense, and rather elected to challenge Womble's allegations directly. That is how the district court interpreted their motion. The court evaluated the sufficiency of Womble's allegations and found he failed to plead Defendants' personal participation. (*Id.* at 159.) But that decision proved wrong, and this Court confirmed Womble adequately pled constitutional claims against Defendants for "food deprivation and failure to maintain sanitary facilities." *Womble*, 770 F. App'x at 921. It was only after Defendants lost their direct challenge to Womble's allegations that they shifted strategy and argued exhaustion on remand. But this change came too late. *See Handberry v. Thompson*,

27

446 F.3d 335, 342 (2d Cir. 2006) (holding change in position on
exhaustion years into the litigation constituted waiver).

Because Defendants waived their exhaustion defense, the district
court lacked authority to hear it. Defendants provided no contrary
authority below (*see* App. Vol. 2 at 354–58 (citing no cases on waiver)),
nor did the district court meaningfully address waiver (*id.* at 398–99).

## B.    But even so, Defendants forfeited their exhaustion defense by waiting years and an entire round of appeals before raising the defense.

The Supreme Court recently reminded that non-jurisdictional
exhaustion rules are subject to forfeiture if not timely raised by
defendants. *See Fort Bend Cnty.*, 139 S. Ct. at 1849. There, an employee
filed a complaint against her former employer for retaliation and
religious discrimination. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 302
(5th Cir. 2018). For five years, the employer defended the case without
reference to exhaustion. After the Fifth Circuit reversed an earlier
dismissal order, however, the employer raised exhaustion on remand.
Like here, the district court dismissed for failure to exhaust. The Fifth
Circuit again reversed, holding the employer forfeited the defense
because it did not raise exhaustion in its answer, its first motion for
summary judgment, or in its briefing and argument before the appellate
courts. "Simply put, Fort Bend waited five years and an entire round of
appeals all the way to the Supreme Court before it argued that Davis
failed to exhaust. On these facts, *it is abundantly clear* that Fort Bend

has forfeited its opportunity to assert this claim." *Id.* at 307–08 (emphasis added). The Supreme Court unanimously affirmed the Fifth Circuit. *Fort Bend Cnty.*, 139 S. Ct. at 1849.

This case is much like *Fort Bend County*. Womble's complaint had been pending five years—almost to the day—before Defendants Chrisman and Sharp first raised their exhaustion defense. (*See* App. Vol. 2 at 261.) Indeed, Defendants filed a motion to dismiss/motion for summary judgment with the district court (App. Vol. 1 at 154), filed multiple briefs before this Court, and participated in oral argument, but they never once mentioned their belief that Womble failed to exhaust his administrative remedies.[8] Like the Fifth Circuit held in *Fort Bend*

---

[8] Unlike the defendant in *Fort Bend County*, Defendants have not answered Womble's amended complaint. That omission, however, does not change the Court's forfeiture analysis. On remand from this Court, the government requested a limited stay and leave to supplement its *Martinez* report, which the district court granted. (App. Vol. 2 at 171.) The stay lifted on September 6, 2019, when the government filed its supplemental *Martinez* report, yet Defendants did not answer. *See* Fed. R. Civ. P. 12(a)(1)(A). Nor did Defendants' motion for summary judgment toll the answer deadline. *See, e.g.*, *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) ("While serving a Rule 12 motion tolls the deadline for a defendant to file an answer, filing a Rule 56 motion has no such effect."); *Dunbar v. Prelesnik*, 2016 WL 11618615, at *2 (6th Cir. Oct. 27, 2016) (unpublished) (same). *But see Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006) (holding motion tolled the answer deadline when defendant filed it as Rule 12 motion and the district court converted it to a Rule 56 motion). Thus, any bid to answer the amended complaint would be at best untimely.

*County*—and the Supreme Court affirmed—"it is abundantly clear" that such conduct constitutes forfeiture of an exhaustion defense.

Nor is the decision in *Fort Bend County* an aberration. Courts routinely find forfeiture when defendants fail to timely raise exhaustion under the PLRA. The Second Circuit found forfeiture when the defendant chose not to press exhaustion because of potential fact issues. *Johnson*, 380 F.3d at 695 n.5, 695–96. The Eleventh Circuit found forfeiture when the defendant failed to raise exhaustion in his first responsive pleading. *Brooks*, 706 F. App'x at 969. And other courts have found forfeiture when defendants argued the merits, only to raise exhaustion years later after their merits arguments failed. *See, e.g.*, *Rose v. Saginaw Cnty.*, 232 F.R.D. 267, 278 (E.D. Mich. 2005) (finding forfeiture and noting three years had passed and defendants had filed motions and made appearances arguing the merits).

The issue this case presents is not merely a technical matter. Dismissal for failure to exhaust is generally without prejudice. *Steele*, 355 F.3d at 1213. It is without prejudice because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw." *Id.* (quoting *Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999)). That is, "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit (in the event the administrative claim fails to afford him the desired relief)." *Id.* (quoting *Snider*, 199 F.3d at 111–12).

30

But permitting defendants to deploy a wait-and-see approach to exhaustion creates perverse incentives. For instance, when a prisoner has moved correctional facilities—or has been released from custody—he loses the opportunity to fix the stated defects through the facility's administrative process. Womble is a prime example. Defendants' strategy to raise exhaustion five years into the case has denied Womble, who has been released, the opportunity to cure.

Failure to find forfeiture here also unnecessarily duplicates this litigation. Although the district court's decision is silent on the matter, as stated above, dismissal for failing to exhaust administrative remedies should be *without* prejudice. *See id.* Thus, even if this Court affirms, Womble could refile his amended complaint as a new action and rely on tolling and savings rules. *Cf. Johnson v. Garrison*, 805 F. App'x 589, 594 (10th Cir. 2020) (unpublished) (applying federal law to equitably toll statute of limitations during exhaustion period); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991) (applying Oklahoma's one-year savings statute to plaintiff's § 1983 claims). Even more, exhaustion would no longer be a bar because Womble is not a prisoner. *See Bargher v. White*, 928 F.3d 439, 448 (5th Cir. 2019) ("[T]hough his present action must be dismissed [without prejudice], Bargher [as a former prisoner] would not be bound by the PLRA's exhaustion requirements if he were to immediately refile."); *see also Norton v. The City of Marietta*, 432 F.3d 1145, 1150 (10th Cir.

2005). In that way, allowing Defendants' untimely exhaustion defense is antithetical to the animating purposes of administrative exhaustion: protecting administrative authority by giving the agency "an opportunity to correct its own mistakes" and promoting efficiency in resolving prisoners' claims. *See Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

*    *    *

At bottom, Defendants Chrisman and Sharp raised their exhaustion defense too late. The district court therefore erred by granting summary judgment to Defendants on the defense.

## II.    Womble Exhausted the Available Administrative Remedies By Repeatedly Grieving the Problems Related to the Overcrowded Facilities.

Between May and August 2014, Womble raised with Defendants Chrisman and Sharp the problems with overcrowding at the MACC. Of these problems, none were more important than the lack of nutritionally adequate food. Defendants' food-rationing policy and serving spoiled food caused Womble to lose 21 pounds—10% of his body weight. (App. Vol. 1 at 141.) Womble also reported problems with the overwhelmed facilities, including the failing bathrooms and showers. (App. Vol. 2 at 317, ¶¶ 43–46, 318, ¶ 49.) During this time, because of the overwhelmed and failing facilities, Womble was exposed to human feces (*id.* at 318, ¶ 48); overflowing toilets causing urine and feces to flow onto the floor (*id.*); flooding showers, which saturated a dayroom

(*id.* at 318, ¶¶ 53–54); clogged drains (*id.* at 317, ¶ 47); mold on the walls of the bathrooms (*id.* at 318, ¶ 53); and, on at least five occasions, he was exposed to his own waste because he soiled himself while waiting on the overburdened bathrooms (*id.* ¶ 52).

Defendants refused to address these urgent issues:

- "[W]e will do nothing about the overcrowding, and you should be grateful you even get food." (*Id.* at 316, ¶ 38.)
- "[N]othing can be done. This is a permanent situation. You'll just have to do your time." (*Id.* at 318, ¶ 49.)
- "We do not have the budget to fix these problems . . . ." (*Id.* at 316, ¶ 38.)

That Defendants were on notice of these problems is evidenced by the slew of RTSs and grievances Womble filed with Defendants—*seven* of which are relevant here—and the utter disarray that surrounded them. To claim Defendants did not have a chance to correct their errors before being haled into federal court, or the ability to settle this case at the administrative level, *see Woodford v. Ngo*, 548 U.S. 81, 89 (2006), is fanciful. Womble exhausted his administrative remedies before filing suit; and this is despite Defendants' varying procedural excuses for why his complaints were supposedly deficient.

## A. Womble exhausted his administrative remedies by raising Defendants' non-response with the ARA consistent with DOC policy.

This Court has said, "[W]e are confident that Congress did not intend the exhaustion requirement to summarily prevent inmates from

vindicating their constitutional rights." *Tuckel v. Grover*, 660 F.3d 1249, 1253 (10th Cir. 2011). Yet, that's precisely how Defendants used the DOC's grievance policy. Even so, Womble still managed to exhaust the available administrative remedies for his constitutional claims.

Days after the inmate population at the MACC swelled from less than 800 to over 900 (App. Vol. 2 at 310, ¶ 12), Womble complained about the overcrowded facilities in a May 16, 2014 RTS (*id.* at 322). He explained, because of "over capacity" problems the "[f]ood being served falls below ACA [American Correctional Association] nutritional standards" and the "[b]athroom and shower facilities are deficient." (*Id.*) Womble later learned his May 16 RTS was denied because it supposedly "addresse[d] more than one issue." (*Id.* at 311, ¶ 18.)

In response, Womble filed another RTS on June 5, and raised a single issue: that the overcrowding violated the fire code. (*Id.* at 324.) This time, Defendant Sharp returned the June 5 RTS because it wasn't specific enough, instructing Womble to state his alleged violations. (*Id.*) Womble grieved the June 5 RTS to Defendant Chrisman on July 3, and explained, "The prison is very overcrowded. The lack of personal space is causing problems between inmates. Also, the food service[s] is not providing enough food to each inmate because of the overcrowding." (*Id.* at 324.) He also pointed out that the "issue[s] fall under <u>one</u> issue which is overcrowding. These requests were rejected for multiple issues being raised. But I am only attempting to raise one issue." (*Id.* (underline in

34

original).) Defendant Chrisman returned the grievance on July 7 because he said Womble did not attach the underlying RTS. (*Id.* at 328.)

Womble followed up with Defendant Chrisman by filing a second grievance. He explained he did not receive the June 5 RTS back from Defendant Sharp until July 8, and he was re-raising the overcrowding issues through a new RTS, dated July 8. (*Id.* at 330.)

In that July 8 RTS, Womble restated the alleged violations from his May 16 and June 5 RTSs, and explained,

> Mr. Sharp, I have attempted to raise the overcrowding issue several times. The multiple violations that were raised in my RTS on 5/16 are not multiple issues. It is multiple violations falling under one issue.
>
> I am giving you a chance to resolve this issue per Warden's request.

(*Id.* at 333.) Defendant Sharp again responded to Womble telling him to "[b]e specific and I will address your issue." (*Id.*) This statement of course is at odds with Defendant Sharp's quip to Womble the month before that "we will do nothing about the overcrowding, and you should be grateful you even get food." (*Id.* at 316, ¶ 38.)

Thus, on August 8, Womble grieved the issue to Defendant Chrisman for a third time, and explained in detail,

> This facility is overcrowded. The Supreme Court in Rhodes v. Wilson has said that while overcrowding by itself is not an 8th [A]mendment violation, rights infringed upon due to overcrowding are actionable. My right to nutritious food, airflow, and a health hab[ilitative] environment have been

encroached upon by the stackin[g] of inmates in dayrooms, libraries, and TV rooms.

(*Id.* at 335–36.) Defendant Chrisman did not respond. (*Id.* at 313, ¶ 25.)

Because Womble did not receive a response to his August 8 grievance, he raised the non-response with the ARA. (*Id.* at 338–39.) To do so, Womble used the Misconduct/Grievance Appeal Form to Administrative Review Authority, one of two ARA-specific forms in DOC policy. (*Id.*; *id.* at 210 (DOC grievance policy listing referenced forms).) In that form, Womble attested that he filed an RTS with Defendant Sharp, received a response to the RTS, filed a grievance with Defendant Chrisman, and did not receive a response to his grievance. (*Id.* at 339.) Womble's attestations track DOC policy, subsection V.C.4: to dispute a non-response of a grievance "the offender may send a grievance to [the ARA] with evidence of submitting the grievance to the proper review authority [here, Defendant Chrisman]." (*Id.* at 200.)

The ARA denied Womble's request in a single line: "**YOU CANNOT APPEAL A NON-RESPONSE.**" (*Id.* at 340.) But this statement goes against DOC policy. Subsection V.C.4 directs inmates to raise the non-response of a grievance with the ARA. Womble did exactly that by filing his grievance appeal form with the ARA and attaching evidence that he submitted a grievance raising the effects of overcrowding, including the lack of nutritionally adequate food and the overwhelmed facilities, with Defendant Chrisman, and that Defendant

36

Chrisman never responded to the grievance. Nonetheless, because the ARA denied Womble final relief, he promptly filed his pro se complaint against Defendants and other state officials. (*See* App. Vol. 1 at 13.)

The district court provided only a cursory explanation for why Womble's exhaustion efforts fell short. (*See* App. Vol. 2 at 401.) The court first suggested that Womble should have filed the facility-level *grievance form* with the ARA, rather than the ARA-specific *grievance appeal form*, to raise the non-response. (*Id.*) But subsection V.C.4 doesn't say which form an inmate must use to raise a non-response with the ARA.[9] Nor did the ARA direct Womble to a particular form.

Even more, using the facility-level grievance form rather than the ARA-specific appeal form makes little sense, because the grievance form is specific to the facility and its review authority, not the ARA.

---

[9] This differs from later DOC policies. For instance, the DOC's November 2014 policy—which postdates Womble's filings and did not apply to him—defined the process for raising the non-response *of an RTS*. (*Id.* at 218.) The policy required the inmate to raise the non-response with the facility by using "the grievance form." (*Id.*) The January 2013 policy, however, did not reference the grievance form. (*Compare id.* (subsection IV.C.10), *with id.* at 200 (subsection IV.C.7).) This revision suggests the DOC's policy was unclear. Critically though, no corresponding change was made to subsection V.C.4.

37

That form provides:



(*Id.* at 335 (highlights added).) *First*, the grievance form conflicts with

subsection V.C.4, because the form prohibits the attachment of

anything except for an RTS and response (first highlight). Subsection

V.C.4, however, requires evidence of submitting the *grievance* and the

non-response. (*Id.* at 200.) *Second*, the grievance form requires an

explanation of the complaint and the informal action taken (second and

third highlights). But raising a non-response under subsection V.C.4

38

concerns one thing—a non-response. No action has been taken. *Third*, the inmate must state who the grievance form is being sent to: the warden, the district supervisor, or the correctional health services administrator (fourth highlight). None of these are the ARA. *Fourth*, the inmate must sign the form and provide the date it was "Sent to Reviewing Authority" (fifth highlight). But the non-response of a grievance is sent to the ARA—not the reviewing authority.

In truth, Defendants' argument that Womble submitted the wrong form is an after-the-fact excuse for the ARA disregarding the DOC's grievance policy. The district court erred by giving the argument dispositive weight in granting summary judgment. (*See id.* at 401.)

Next, in passing, the district court suggested the ARA *could have* rejected Womble's filing because it was premature. (*See id.*) But the ARA didn't reject the filing on this basis. Instead, it reviewed Womble's filing and incorrectly reasoned that an inmate cannot raise a non-response with the ARA. Because the ARA accepted Womble's filing, Defendants cannot dispute the timeliness of his filing five years later. *See Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *see also Cannon v. Mason*, 340 F. App'x 495, 497 (10th Cir. 2009) (unpublished).

39

### B.    If DOC policy required more of Womble, the policy is prohibitively opaque and confusing so that any administrative remedy was unavailable.

The PLRA only requires prisoners to exhaust available remedies. *Tuckel*, 660 F.3d at 1252. For a remedy to be "available," it must be "capable of use for the accomplishment of a purpose." *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)).

Womble followed DOC policy by raising Defendant Chrisman's non-response with the ARA through the grievance appeal form. If DOC policy required more of Womble, the policy is so opaque and confusing that no ordinary inmate could discern what steps were necessary, making administrative relief unavailable. *See Baughman v. Harless*, 142 F. App'x 354, 360 (10th Cir. 2005) (unpublished) (rejecting defendants' argument that exhaustion required more than what's in the policy). Indeed, the ARA's response letter to Womble referring him "**TO OP-090124 SECTION V.C. FOR GUIDANCE**" provided no direction beyond what Womble did—that is, present the non-response to the ARA for review. The ARA's vague denial, along with subsection V.C.4's text, left Womble in a carrousel of administrative obscurity.

Even Defendants struggled with divining subsection V.C.4's requirements. Before the district court, Defendants argued, "The appeal was returned unanswered" because the "non-response must be grieved *at the facility* rather than appealed to the ARA." (App. Vol. 2 at 264–65 (emphasis added) (citing subsection V.C.4).) Not so. Subsection V.C.4

states that, if there has been no response *from the reviewing authority*, the inmate must raise the non-response *with the ARA*. (*Id.* at 200.)

This Court has warned state prison officials against creating roadblocks where none exist. In *Little v. Jones*, the Court held the ARA lacked authority for rejecting an appeal that raised more than one issue. 607 F.3d 1245, 1249 (10th Cir. 2010). Because the ARA exceeded its authority in rejecting Little's appeal, the Court held the ARA's actions "rendered th[e] final step of exhaustion unavailable." *Id.* at 1250; *see also Burnett v. Jones*, 437 F. App'x 736, 743 (10th Cir. 2011) (unpublished) ("Ms. Morton erred in rejecting Mr. Burnett's grievance appeals . . . . Because Ms. Morton's actions in rejecting these appeals rendered proper exhaustion unavailable, proper exhaustion for these incidents is excused."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."). The same rationale applies here. Defendant Chrisman's failure to respond to Womble's grievance, along with the ARA's interpretation of DOC policy to prohibit Womble from raising the non-response, rendered proper exhaustion unavailable. To be sure, "[Womble] cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented [him] from exhausting [his] administrative remedies." *See Little*, 607 F.3d at 1250 (quoting *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc)).

41

\*     \*     \*

The competent evidence shows that Womble exhausted the available administrative remedies. If he did not complete the process, it was because Defendants and the ARA improperly stood in his way. The district court erred in finding otherwise.

## III. Alternatively, the District Court Should Have Ordered Limited Discovery on Whether Problems With Overcrowding Are Non-Grievable Issues.

Before the district court, Womble argued that Defendants Chrisman and Sharp waived or forfeited their exhaustion defense (App. Vol. 2 at 294–95), and that he exhausted the available administrative remedies (*id.* at 290–95). Alternatively, Womble argued that if the district court disagreed, it should order limited discovery on

> (i) whether the DOC and the MACC had formal guidance on answering RTSs and grievances addressing issues of overcrowding such that no administrative remedies were available for relief, and (ii) responses to RTSs and grievances made by other inmates related to overcrowding to determine whether the DOC and Defendants concertedly thwarted inmates' requests for administrative relief.

(*Id.* at 295–96 (citation omitted).) Counsel supported this request for discovery with a declaration under Federal Rule of Civil Procedure 56(d) (*see generally id.* at 341). *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (citing *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010)).

42

The district court did not address the Rule 56(d) declaration. Instead, the court summarily found "[a]fter consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether Plaintiff's claims are unexhausted." (App. Vol. 2 at 401.) But whether there are fact issues does not answer whether the nonmovant is entitled to discovery *before* the district court grants a motion for summary judgment. "Ordinarily, remand to the district court may be appropriate" when "[t]he district court did not expressly rule on the Rule 56(d) affidavit." *Cerveny*, 855 F.3d at 1109 n.17. Based on the developed record, however, Womble asks the Court to remand the case and instruct the district court to order the requested discovery.

The Rule 56(d) declaration complies with the Court's *Valley Forge* requirements. *First*, it identified the facts that are unavailable. (App. Vol. 2 at 343, ¶¶ 13.a–c.) Counsel identified these facts:

- Whether the DOC and the MACC had guidance on answering RTSs and grievances that addressed issues of overcrowding or problems related to overcrowding.
- Responses to RTSs and grievances made by other inmates that addressed issues of overcrowding or problems related to overcrowding.
- How the DOC records and retains complaints, RTSs, grievances, and grievance appeals and related documents for complaints.

43

*Second*, the declaration stated how the discovery would allow Womble to rebut Defendants' arguments on summary judgment. (*Id.* at 344, ¶ 14.) These facts are central to Defendants' claim that administrative relief was "available." If there was an institutional policy against administrative claims for issues related to overcrowding, or if the DOC and Defendants concertedly thwarted inmates' requests for such relief, no administrative relief was available and Womble is excused.

Womble has good reason to believe the overcrowding issues he grieved are non-grievable issues under DOC policy. In *Savage v. Fallin*, a federal court in Oklahoma observed that, under DOC policy, issues much like those raised by Womble were non-grievable. No. CIV-15-1194-HE, 2017 WL 9802856, at *7–8 (W.D. Okla. Nov. 29, 2017) (quoting standard grievance response form and citing ARA response form rejecting inmate's overcrowding complaint as non-grievable), *report and recommendation adopted in part, rejected in part*, No. CIV-15-1194-HE, 2018 WL 1558281 (W.D. Okla. Mar. 30, 2018). The court noted "the issue of problems caused by overcrowded and understaffed prisons was deemed 'not an issue grievable to Oklahoma Department of Corrections.'" *Id.* at *8. The court then held that the inmate "was clearly informed that no administrative remedy was available to address his complaints. A prisoner need not go through the motions of exhausting

44

administrative remedies that are unavailable." *Id.* (citing *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016)).[10]

*Third* and *Fourth*, the declaration stated why discovery was necessary and identified past steps to obtain the evidence. (App. Vol. 2 at 342, ¶¶ 10–12.) Counsel explained that Womble's case had been pending for five years and Defendants had yet to answer the complaint. Nor had Defendants made initial disclosures. Nor had Womble been allowed to conduct written or deposition discovery.

When this case was first filed, the government moved to stay and for leave to file a *Martinez* report, which the court granted. (App. Vol. 1 at 25.) At the same time it filed the *Martinez* report, the other defendants filed a motion to dismiss/motion for summary judgment. (*Id.* at 104.) After the motion was granted, Womble amended his complaint and perfected service on Defendants Chrisman and Sharp. (*See id.* at 146.) Defendants Chrisman and Sharp immediately filed a motion to dismiss/motion for summary judgment (*id.* at 154), which the court granted (*id.* at 163). After Womble successfully prosecuted an appeal of

---

[10] *Accord Savage v. Fallin*, No. CIV-15-1194-HE, 2019 WL 8108358, at *3 (W.D. Okla. Aug. 19, 2019) (reaffirming no administrative action was taken "because prison overcrowding and understaffing are not problems for which there is an available remedy through the ODOC Grievance Process"), *report and recommendation adopted in part, rejected in part*, No. CIV-15-1194-HE, 2020 WL 292186 (W.D. Okla. Jan. 21, 2020), *aff'd*, 845 F. App'x 772 (10th Cir. 2021) (unpublished).

that order, on remand the government again moved to stay and for leave to file a supplemental *Martinez* report, which the court granted. (App. Vol. 2 at 171.) When Defendants filed yet another motion for summary judgment, besides the Rule 56(d) declaration, Womble moved to compel a discovery conference and initial disclosures. (*Id.* at 362.) The court summarily denied that motion. (*Id.* at 394.)

All along, Defendants have avoided Womble's attempts to discover facts necessary to prosecute this case, including facts central to Defendants' exhaustion defense. To be clear, the only disclosures made by the government are in the *Martinez* reports. These reports include at least 800 pages of self-selected documents and 10 one-sided affidavits from DOC staff, including *four* from Defendants Chrisman and Sharp. (*See* App. Vol. 1 at 41–42.) But this material has not been truth tested.

If the DOC had a no-grievance policy for "problems caused by overcrowding," no administrative remedy was available. Womble should have been allowed to elicit discovery on this point before the district court granted summary judgment. But the district court did not even acknowledge Womble's request. This was error.

## CONCLUSION

Womble asks the Court to REVERSE the district court and REMAND the case for further proceedings. Defendants Chrisman and Sharp waived their exhaustion defense, and Womble exhausted the available administrative remedies. But if the Court disagrees, it should

still REVERSE the district court and REMAND with instructions to order limited discovery consistent with Rule 56(d). Finally, if the Court disagrees with all the above, it should REMAND with instructions to the district court to DISMISS Womble's claims against Defendants Chrisman and Sharp *without* prejudice so he can refile.

## STATEMENT REGARDING ORAL ARGUMENT

Because of the complexity of the procedural history and the importance of the issues presented in this appeal, Womble believes oral argument may be beneficial to the Court.

Dated: June 23, 2021                    Respectfully submitted,

*s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.
Bridget C. DuPey
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
(303) 223-1100
jellis@bhfs.com;
bdupey@bhfs.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains **10,491** words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: June 23, 2021.

*s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.

48

## CERTIFICATE OF SERVICE

I certify that on June 23, 2021, I electronically filed the Opening Brief with the Clerk of the Court for the U.S. Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify the seven printed copies of the Opening Brief will be delivered to the Clerk of Court, U.S. Court of Appeals for the Tenth Circuit, Byron White U.S. Courthouse, 1823 Stout Street, Denver, Colorado 80257-1823, for delivery to the Court within five business days of the Court issuing notice the filing has been accepted.

Dated: June 23, 2021.

*s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.

# Attachment 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

**JOSEPH Z. WOMBLE,**

                                    Plaintiff,

v.                                                          **Case No. 14-CV-385-JFH-SPS**

**JERRY CHRISMAN and**
**TOMMY SHARP,**

                                    Defendants.

### OPINION AND ORDER

Plaintiff appealed the Court's August 7, 2017, dismissal of this action [Dkt Nos. 78-80].

The Tenth Circuit Court of Appeals affirmed in part, reversed in part, and remanded for further

proceedings in *Womble v. Chrisman*, No. 17-7056, 770 F. App'x 918 (10th Cir. May 23, 2019)

[Dkt. No. 87]. At the direction of the Court, the remaining defendants, Jerry Chrisman, the warden

at Mack Alford Correctional Center ("MACC") and Tommy Sharp, the deputy warden

("Defendants"), filed a special report in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th

Cir. 1978) [Dkt. No. 91] and a motion for summary judgment [Dkt. No. 92]. Plaintiff, who is

represented by counsel, filed responses to the motion and the special report [Dkt. Nos. 101-102],

and the defendants filed a reply to the response [Dkt. No. 105].[1]

**Plaintiff's Claims**

Plaintiff's remaining claims against Defendants are that his rights under the Eighth

Amendment were violated by Defendants' failure to provide him adequate nutrition and their

---

[1]  The Court takes judicial notice of the Oklahoma Department of Corrections Offender website at
https://okoffender.doc.ok.gov, pursuant to Fed. R. Evid. 201, which indicates Plaintiff has been
released from incarceration and is on probation. *See Triplet v. Franklin*, 365 F. App'x 86, 92,
2010 WL 409333, at *6  n.8 (10th Cir. Feb. 5, 2010)

failure to inadequately maintain bathroom and shower facilities which resulted in unhygienic conditions. *Womble*, 770 F. App'x at 921. The Tenth Circuit summarized Plaintiff's claims alleging food deprivation, inadequate nutrition, and inadequate maintenance of showers and bathrooms as follows:

> Beginning in May 2014, Messrs. Chrisman and Sharp ordered that food be rationed in response to a growing population of inmates. Mr. Womble was served very small portions, and "spoiled meat, fruit and milk . . . on a regular basis" resulting in stomach pain, digestive damage, vomiting, and weight loss. He lost 21 pounds between May 2014 and September 2015. At some point, Mr. Womble informed Mr. Chrisman, Mr. Sharp, and Donna Vitoski (the food service manager at MACC) of these problems but was told that they did not have the budget to fix the problems. According to Mr. Womble, Mr. Sharp said in June 2014, "[W]e will do nothing about the overcrowding, and you should be grateful you even get food."

*Id.* at 921-22 (internal citations omitted).

> The complaint alleges that Ms. Vitoski was ordered to ration food by Mr. Sharp and Mr. Chrisman starting in May 2014 and that Mr. Chrisman ordered Ms. Vitoski to divert funds from food to security. . . . Mr. Womble alleged that he informed Mr. Chrisman, Mr. Sharp, and Ms. Vitoski that "he was getting sick from the food because of the rationed food portions, the spoiled nature of the food and the infestation of cockroaches in the kitchen." Supp. R. 21. They responded that they did "not have the budget to fix these problems." Again, Mr. Womble alleged that he was continually served inadequate amounts of food, that he was served spoiled food on a regular basis, and that he became ill and lost 21 pounds between May 2014 and September 2015. . . . [T]he rationing lasted more than 16 months, he lost 21 pounds, and he suffered from stomach pain, digestive damage, and vomiting.

*Id.* at 923-24 (internal citations omitted).

> Mr. Womble's amended complaint alleges his housing unit had too few showers and toilets for the inmate population. Specifically, he says there were 11 working showers for 132 inmates, and Mr. Chrisman and Mr. Sharp refused to order nonfunctioning showers to be fixed. Mr. Womble claims that he fell and injured his head, and developed an ear infection when one of the showers flooded. Mr. Womble also alleges that there was often only one functioning bathroom available for 32 inmates in one portion of the dormitory in part because inmates were housed in cells once set aside as bathrooms. According to Mr. Womble, the inadequate facilities required him to hold bowel movements, exposed him to feces on two occasions, caused him to soil himself, and resulted in damage to his digestive system. Mr. Womble alleges he raised the issue with Mr. Chrisman and Mr. Sharp, but they ignored his complaint, stating: "[N]othing can be done. This is a

2

permanent situation, you'll just have to do your time."

*Id*. at 925 (internal citations and footnote omitted).

**Standard of Review for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants allege Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available

administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff ("RTS") within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. All medical grievances must be submitted to the facility correctional health services administration for resolution. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority ("ARA") or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. [Dkt. No. 91-6 at 6-9, 12-14].

In his response to the motion for summary judgment [Dkt. No. 101], Plaintiff alleges he exhausted the available administrative remedies for his Eighth Amendment claims to the extent there were any remedies. He further argues that Defendants should be barred from raising their exhaustion defense five years into this litigation. In support of this

4

**App. 398**

assertion, Plaintiff cites *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018), however, that case does not concern exhaustion of administrative remedies under 42 U.S.C. § 1997e(a).   Therefore, the Court will proceed with the issue of exhaustion of administrative remedies.

The record shows that Plaintiff submitted ten RTSs, three grievances, and one appeal to the ARA during the time relevant to his claims.  The grievances and the ARA appeal were as follows:

**Grievance No. 14-15**:  On July 7, 2014, Plaintiff submitted a grievance raising claims of overcrowding and inadequate food service and requesting the release or transfer of inmates as a form of relief.  The grievance was returned unanswered for failure to include a corresponding RTS, as required by OP-09124(V)(A).  Plaintiff was advised that he was granted ten calendar days to properly submit the grievance, however, there is no indication he complied with these directions.  [Dkt. No. 91-13].

**Grievance No. 14-16:**  On July 11, 2014, Plaintiff filed a grievance concerning the non-response or late response to an RTS.  The grievance was returned unanswered with directions for grieving a non-response to an RTS.  [Dkt. No. 91-14].  Plaintiff apparently did not proceed with his exhaustion efforts for this grievance.

**Grievance No. 14-20:**  On July 8, 2014, Plaintiff submitted an RTS, raising a generalized claim of overcrowding and requesting transfer or release of excess inmates to correct law violations.  He stated that the multiple violations he had raised in an RTS on May 16 was not a claim of multiple issues, but rather "multiple violations falling under one issue."  The August 6, 2014, response stated, "You still have not told me what law

5

violations have occurred or what you want me to do.  Be specific and I will address your issue." [Dkt. No. 91-15 at 2].

On August 13, 2017, Plaintiff filed Grievance No. 14-20, complaining of overcrowding and seeking the release or transfer of excess inmates.  Plaintiff also claimed that the overcrowding was related to a lack of nutritious food, airflow, and a healthy environment.  The grievance was returned unanswered on August 15, 2014, because Plaintiff had not "addressed a specific issue through RTS to be addressed," as required by OP-190124.  Plaintiff was granted ten days to submit a proper grievance.  *Id*. at 3-5.  Plaintiff asserts, however, that he did not receive the grievance response [Dkt. No. 101-1 at 5, ¶ 25].

On August 29, 2014, Plaintiff submitted a grievance appeal to the ARA in ARA No. 14-316, alleging that on August 7, 2014, he had attempted to file a grievance with Warden Chrisman concerning an RTS response he received on August 6, 2014.  Plaintiff complained in the ARA appeal that more than 15 working days had passed since he submitted the grievance, and he asked that Warden Chrisman be ordered to respond to the grievance.  The September 4, 2014, response from the ARA stated that Plaintiff had filed an improper grievance, because he could not appeal a non-response to a grievance.  [Dkt. No. 91-18].  The response also referenced OP-191124(V)(C), which states in pertinent part:

C.  Time Frames for the Review of Grievances

4.  If there has been no response [to a grievance] by the reviewing authority within 30 calendar days of submission, the offender may send a grievance to the administrative review authority or chief medical officer with evidence of submitting the grievance to the proper reviewing authority.  The grievance submitted to the administrative review authority or chief medical officer may

assert only that the offender's grievance was not answered.

OP-190124(V)(C)(4) [Dkt. No. 91-6 at 10].

Plaintiff argues that to the extent OP-190124(V)(C)(4) required more of him, the policy "is so opaque and confusing that any administrative remedy was effectively unavailable" [Dkt. No. 101 at 18].  Defendants allege in their reply that rather than filing a *grievance* regarding the lack of response to the August 8 grievance, Plaintiff filed a *grievance appeal* on August 29, 2014, complaining of the non-response.  Defendants further point out that if Plaintiff had attempted to grieve the non-response on August 29, it likely would have been rejected as premature, because 30 days had not passed since the grievance was submitted on August 8.  [Dkt. No. 105 at 5].  The Court finds that Grievance No. 14-20 was not exhausted.

After consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether Plaintiff's claims are unexhausted.

**THEREFORE,** Defendants' motion for summary judgment [Dkt. No. 92] is **GRANTED**.

**IT IS SO ORDERED** this 24th day of March 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

7

**App. 401**

# Attachment 2

AO450 (Rev. 5/85)   Judgement in a Civil Case

UNITED STATES DISTRICT COURT

_____EASTERN_____ DISTRICT OF _____OKLAHOMA_____

**JUDGMENT IN A CIVIL CASE**

JOSEPH  Z. WOMBLE

V.

JERRY CHRISMAN, et al.,                  Case Number:   CIV-14-385-JFH-SPS

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issued have been tried and the jury rendered its verdict.

X **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard a decision has been rendered.

IT IS ORDERED AND ADJUDGED

Judgment is hereby entered for Defendants and against Plaintiff.

3/25/2021                                    PATRICK KEANEY
_____                         _____
Date                                         Clerk

                                             s/ A Green
                                             _____
                                             (By) Deputy Clerk