## Case No. 21-7015

In the United States Court of Appeals
for the Tenth Circuit

**Joseph Z. Womble,**
*Plaintiff-Appellant,*

v.

**Jerry Chrisman, Warden; and Tommy Sharp,**
**Deputy Warden, Mack Alford Correctional Center,**
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Oklahoma
Case No. 6:14-cv-00385-JFH-SPS
The Honorable John F. Heil, III

## Reply Brief

Julian R. Ellis, Jr.
Bridget C. DuPey
BROWNSTEIN HYATT
 FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
(303) 223-1100
jellis@bhfs.com;
bdupey@bhfs.com

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ........................................................................ 1

ARGUMENT ........................................................................... 3

I.    **[Issue 1]** Defendants' Exhaustion Defense Was Untimely ........... 3

II.   **[Issue 2]** Womble Exhausted the Administrative Remedies
      That Were Available ............................................................ 7

      A.   Womble raised Defendant Chrisman's non-response
           with the ARA consistent with DOC policy ............................... 7

      B.   If another DOC form was required, the ARA's vague
           and non-substantive response made any administrative
           remedy unavailable ........................................................ 11

III.  **[Issue 3]** Summary Judgment for Defendants was Premature
      and Improper Under Rule 56(d) ................................................ 12

IV.   Defendants' Alternative Grounds for Affirmance Are Mired
      in Fact Issues and Cannot Support Summary Judgment ............. 16

      A.   Womble's competent evidence creates fact issues on
           whether Defendants were deliberately indifferent in
           violating his Eighth Amendment rights ............................... 16

      B.   The Eighth Amendment rights Womble alleged
           Defendants violated are clear and well-established
           in this Circuit and others ............................................. 23

CONCLUSION ......................................................................... 27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................. 29

CERTIFICATE OF SERVICE ......................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Ashaheed v. Currington,*
   --- F.4th ----, 2021 WL 3502621
   (10th Cir. Aug. 10, 2021) ...................................................... 23

*Estate of Booker v. Gomez,*
   745 F.3d 405 (10th Cir. 2014) .............................................. 24

*Camreta v. Greene,*
   563 U.S. 692 (2011) .............................................................. 23

*Colbruno v. Kessler,*
   928 F.3d 1155 (10th Cir. 2019) ...................................... 23, 24

*DeSpain v. Uphoff,*
   264 F.3d 965 (10th Cir. 2001) .............................................. 27

*Dist. of Columbia v. Wesby,*
   138 S. Ct. 577 (2018) ..................................................... 23, 24

*Eberhart v. United States,*
   546 U.S. 12 (2005) .................................................................. 6

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ........................................................ 21, 25

*Fogarty v. Gallegos,*
   523 F.3d 1147 (10th Cir. 2008) ............................................ 24

*Fort Bend Cnty. v. Davis,*
   139 S. Ct. 1843 (2019) ............................................................ 6

*Gonzales v. Duran,*
   590 F.3d 855 (10th Cir. 2009) ......................................... 24–25

*Hall v. Bellmon,*
   935 F.2d 1106 (10th Cir. 1991) ............................................ 17

*Hope v. Pelzer,*
   536 U.S. 730 (2002) .............................................................. 24

## TABLE OF AUTHORITIES (con't)

*Jackson v. Carpenter*,
No. CIV 18-388-RAW-SPS, 2021 WL 2481875
(E.D. Okla. June 17, 2021) ................................................... 5

*Jones v. Bock*,
549 U.S. 199 (2007) ............................................................ 10

*Kikumura v. Osagie*,
461 F.3d 1269 (10th Cir. 2006) ..................................... 10, 11

*Maberry v. Stotts*,
17 F.3d 1437 (10th Cir. 1994) ........................................... 17

*Maestas v. Lujan*,
351 F.3d 1001 (10th Cir. 2003) ......................................... 25

*Martinez v. Aaron*,
570 F.2d 317 (10th Cir. 1978) ........................................... 16

*Meneweather v. Powell*,
No. C 07-4204 SBA (PR), 2011 WL 13209593
(N.D. Cal. Dec. 13, 2011) ................................................... 14

*Pierce v. Gilchrist*,
359 F.3d 1279 (10th Cir. 2004) ......................................... 24

*Rachel v. Troutt*,
820 F.3d 390 (10th Cir. 2016) ..................................... 16–17

*Ramos v. Lamm*,
639 F.2d 559 (10th Cir. 1980) ............................... 25, 26, 27

*Savage v. Fallin*,
No. CIV-15- 1194-HE, 2017 WL 9802856
(W.D. Okla. Nov. 29, 2017) ............................................... 12

*Savage v. Fallin*,
No. CIV15-1194-HE, 2018 WL 1558281
(W.D. Okla. Mar. 30, 2018) ............................................... 12

*Thompson v. Gibson*,
289 F.3d 1218 (10th Cir. 2002) ......................................... 25

# TABLE OF AUTHORITIES (con't)

*Vincent v. Stewart*,
   No. C16-5023-RBL, 2020 WL 59870
   (W.D. Wash. Jan. 2, 2020) .................................................................. 14

*Vincent v. Stewart*,
   No. C16-5023RBL, 2020 WL 59531
   (W.D. Wash. Jan. 6, 2020) .................................................................. 14

*Wilson v. Phillips*,
   807 F. App'x 872 (10th Cir. 2020).......................................................... 6

*Womble v. Chrisman*,
   770 F. App'x 918 (10th Cir. 2019)....................17, 18–19, 20–21, 24, 26

## Constitutional Provision

U.S. Const. amend. VIII ............................................................ 18, 20, 22

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................... 4, 5

Fed. R. Civ. P. 26................................................................................... 14

Fed. R. Civ. P. 26(a)(1)(C) ..................................................................... 15

Fed. R. Civ. P. 26(d)............................................................................... 14

Fed. R. Civ. P. 26(f) ........................................................................... 14–15

Fed. R. Civ. P. 56(a)............................................................................... 16

Fed. R. Civ. P. 56(d)................................................... 2, 12, 13, 15, 22, 28

## Other Authorities

Alysia Santo & Lisa Iaboni, *What's in a Prison Meal?*, The
   Marshall Project (July 7, 2015, 7:20 A.M.)......................................... 19

Mot. to Dismiss, *Jackson v. Carpenter*, No. Civ. 18-388-RAW-
   SPS (W.D. Okla. Sept. 9, 2019) (Dkt. 30) ........................................ 4–5

Pl's Obj. to *Martinez* Report, *Womble v. Chrisman*, No. 6:14-
   cv-00385-JFH-SPS (W.D. Okla. Feb. 20, 2015) (Dkt. 29) ................... 5

## INTRODUCTION

Joseph Womble sued in 2014, to correct deplorable conditions and inhumane treatment at the MACC.[1] Chief among the constitutional deprivations was Defendants' sustained policy of rationing food to a point that would not sustain the weight of twelve-year-old boy, much less a grown man. This policy had a serious physical impact on Womble, causing severe stomach pain and weight loss equal to nearly ten percent of his body weight in just four months. At the same time, due to the overwhelmed facility and crushing use, the bathroom and shower facilities at the MACC were in near-constant disrepair. Womble used bathrooms flooded with urine and feces; soiled himself multiple times waiting on the single toilet provided to 31 inmates; and sloshed through flooded showers and sleeping quarters due to regular clogging. Womble raised these constitutional violations with Defendants—even citing U.S. Supreme Court case law—but they brushed him off: "You'll just have to do your time." The Constitution requires more.

This case has been pending for seven years. During that time, Womble has defended against multiple dispositive motions, filed three appeals with this Court, and otherwise satisfied the requirements of a civil claimant. Defendants on the other hand have refused to answer Womble's amended complaint, resisted all discovery, flooded the record with impartial *Martinez* reports, and filed two pre-answer dispositive

---

[1] This brief uses the same terms defined in the opening brief.

1

motions. In doing so, Defendants have avoided the adversarial truth-finding process, while using one-sided information to proclaim an entitlement to summary judgment.

The district court ignored this disparity and granted summary judgment over Womble's request for targeted discovery under Rule 56(d). This was error.

Even more, Defendants' exhaustion defense, raised five years into the litigation and after vigorously challenging the merits of Womble's allegations before the district court and on appeal, was untimely. Defendants counter by claiming they raised exhaustion "at the first opportunity." But this excuse is irreconcilable with the facts. Other defendants raised exhaustion in 2015, and Defendants Chrisman and Sharp are represented by the same counsel. Defendants offer no credible explanation for why they elected to forgo an exhaustion defense and argue the merits for years until losing on appeal. The facts of this case perfectly illustrate why waiver and forfeiture doctrines should foreclose Defendants' untimely exhaustion challenge.

But even so, Womble exhausted the available administrative remedies. Defendants dispute this by doubling-down on the district court's finding that Womble submitted the wrong form (the grievance *appeal* form rather than the grievance form) to the ARA to raise Defendant Chrisman's failure to respond to Womble's grievance. But DOC policy does not direct inmates to use a particular form, and

2

Womble used the only form that could have applied. Thus, there were no additional steps for Womble to take in the exhaustion process. Nor do Defendants defend the ARA's vague response that Womble "cannot appeal a non-response." If the ARA believed Womble submitted the wrong form, it had the opportunity to say so. But it didn't.

Finally, the Court should decline Defendants' invitation to address issues that were passed over by the district court. This includes Defendants' argument that Womble cannot present evidence of a constitutional violation. To make this argument work, Defendants ignore Womble's declaration in opposition to summary judgment, which explained in detail the facts surrounding the constitutional violations. Indeed, Defendants do not acknowledge the declaration. Likewise, Defendants' qualified immunity defense is beset by fact issues. Womble's version of the events, believed as true, alleges a violation of clearly established constitutional rights in this Circuit.

The district court erred by granting summary judgment to Defendants on their exhaustion defense. Womble asks the Court to reverse the district court and remand the case for further proceedings consistent with the Court's decision.

## ARGUMENT

## I.     [Issue 1] Defendants' Exhaustion Defense Was Untimely.

Defendants resist waiver and forfeiture and argue they raised exhaustion "at the first opportunity." (*See* Red Br. 17.) This "first

opportunity" came five years into the litigation, in a second dispositive motion filed over four years after their co-defendants raised exhaustion, and after the case was argued to this Court and remanded for further proceedings. Defendants' position does not survive scrutiny.

**1.** Defendants' co-defendants raised exhaustion in their initial motion to dismiss/motion for summary judgment. (App. Vol. 1 at 111–12.) Why Defendants didn't do the same is explained only by their strategic decision to abandon the exhaustion defense and proceed to the merits (waiver) or their oversight in raising exhaustion (forfeiture). Defendants argue otherwise: (1) they could not raise exhaustion under Rule 12(b)(6); and (2) they could not use the *Martinez* report to argue exhaustion because Womble had objected to it. (Red Br. 16–17.) How these barriers were insurmountable for Defendants but not their co-defendants is unclear; nonetheless, each is without merit.

*First*, § 1983 defendants routinely raise Rule 12(b)(6) arguments alongside exhaustion in a combined motion to dismiss/motion for summary judgment. The co-defendants did so here, and they were represented by the same counsel as Defendants. (*See* App. Vol. 1 at 111–12.) Even more, despite its impropriety post-*Jones*, the Oklahoma Attorney General's Office regularly raises exhaustion in Rule 12(b)(6) motions and uses *Martinez* reports as supporting evidence. *See, e.g.*, Mot. to Dismiss at 5–8, *Jackson v. Carpenter*, No. Civ. 18-388-RAW-SPS (W.D. Okla. Sept. 9, 2019) (Dkt. 30) (raising exhaustion under Rule

12(b)(6) and citing DOC policy and exhaustion documents in *Martinez* report for support). And, district courts appear to grant such motions under Rule 12(b)(6). *See Jackson v. Carpenter*, No. CIV 18-388-RAW-SPS, 2021 WL 2481875, at \*3 (E.D. Okla. June 17, 2021).

*Second*, Womble's objection to the first *Martinez* report was no barrier to Defendants raising exhaustion in their first motion to dismiss/motion for summary judgment. Through his objection, Womble disputed factual inaccuracies in the *Martinez* report. The objections identified the deficiencies in the maintenance work orders and food-services reports, and also highlighted the serial health issues with the MACC's kitchen. But Womble did not reference exhaustion in his objection. Defendants are simply mistaken that Womble asserted he "should be excused from the exhaustion requirements" in his objection to the *Martinez* report.[2] (*See* Red. Br. 16.) At bottom, nothing prevented Defendants from relying on the exhaustion documents in the *Martinez* report—like their co-defendants did—or attaching a declaration with the relevant exhaustion facts and documents.

**2.** Defendants next contend the "passage of time" or delay cannot constitute forfeiture because courts in this Circuit have said that exhaustion need not be raised in the first pleading. (Red Br. 17.)

---

[2] Defendants reference Womble's objection to the *Martinez* report but do not include it in their supplemental appendix. *See* Pl's Obj. to *Martinez* Report, *Womble v. Chrisman*, No. 6:14-cv-00385-JFH-SPS (W.D. Okla. Feb. 20, 2015) (Dkt. 29).

Defendants cite four cases for this point. (*Id.*) Three of the four are based on an overturned understanding of "mandatory" under the PLRA. (*See* Blue Br. 25 n.7 (explaining cases relying on *Steele*'s and *Beaudry*'s understanding of mandatory are stale).) The fourth case, *Wilson v. Phillips*, addressed a different issue altogether: whether failure to list exhaustion in the first pretrial order, but including it in an amended pretrial order, constituted waiver. 807 F. App'x 872, 875 (10th Cir. 2020) (unpublished). Thus, Defendants' cases are of no help.

Nor do Defendants reconcile the Supreme Court's unassailable charge that "an objection based on a mandatory claim-processing rule [like the PLRA's exhaustion requirement] may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)).

Defendants attempt to distinguish *Fort Bend County* on limited grounds: unlike the defendants there, Defendants here only filed one motion for summary judgment. (Red Br. 18.) Setting aside that Defendants called their first motion a "motion to dismiss/motion for summary judgment," Defendants miss the point of *Fort Bend County*. When a defendant has knowledge of an exhaustion defense, elects not to raise it and instead presses the merits of the case, and loses on appeal, the defendant forfeits the right to raise exhaustion for the first time on remand. (*See* Blue Br. 30 (collecting cases).) Here, there's no doubt

6

Defendants were aware of the exhaustion argument because their co-defendants made an identical argument on January 30, 2015—55 months before Defendants first raised it. (*See* App. Vol. 1 at 111–12.) It is also clear that Defendants, whether for strategic reasons or other reasons, did not raise exhaustion in their *first* motion or on appeal, but rather attacked the merits of Womble's allegations. (*See id.* 154–62.) On these facts, Defendants forfeited the opportunity to raise exhaustion for the first time on remand five years into the litigation.

In the end, if Defendants' practice is allowed, it will serve as a blueprint for § 1983 defendants to pocket available exhaustion defenses early in the case (because dismissal for failure to exhaust is generally without prejudice), take advantage of judicial fora to test their merits arguments, only to unmask their exhaustion defense when their merits arguments fall short. This prejudices plaintiffs (*see* Blue Br. 30–31), unnecessarily burdens the courts, and is contrary to purposes of administrative exhaustion under the PLRA.

## II.    [Issue 2] Womble Exhausted the Administrative Remedies That Were Available.

### A.    Womble raised Defendant Chrisman's non-response with the ARA consistent with DOC policy.

**1.** Defendants' position that Womble did not exhaust turns on the form Womble submitted to the ARA. First raised in their reply in support of summary judgment, Defendants contend that Womble should have used a facially inconsistent facility-level "grievance form" rather

7

than the more intuitive ARA-specific "grievance appeal form."[3] (*See* App. Vol. 2 at 356.) This argument falls short.

To prop up their wrong-form argument, Defendants offer two examples in DOC policy that purport to require inmates to submit a grievance form to the ARA. These examples are telling. The first example is subsection VII.A.4, which covers emergency or sensitive grievances. (*Id.* at 205.) The policy allows inmates to *start* the grievance process with the ARA when the complaint involves the review authority and concerns a sensitive matter—for instance, improper conduct on the part of the review authority. (*Id.*) In that case, inmates are instructed to bypass the review authority and submit the initial grievance directly to the ARA. (*Id.*) Critically though, because such a process runs counter to the DOC's ordinary grievance process, the policy states the inmate "must use the 'Offender Grievance Report Form' (DOC 090124A)." (*Id.*) That is, the policy specifies which form to submit to the ARA.

---

[3] In their motion for summary judgment, Defendants offered a different excuse for why Womble's submission was deficient: it was submitted to the wrong reviewer. (App. Vol. 2 at 264–65 (arguing Womble should have raised Defendant Chrisman's non-response with the "review authority" (which was Defendant Chrisman).) That position is clearly wrong, and Defendants abandoned it in reply.

8

The other example Defendants offer is the DOC's policy for raising a non-response with the ARA:

> 4.   If there has been no response by the reviewing authority within 30 calendar days of submission, the offender may send a grievance to the administrative review authority or chief medical officer with evidence of submitting the grievance to the proper reviewing authority. The grievance submitted to the administrative review authority or chief medical officer may assert only that the offender's grievance was not answered.

(*Id.* at 200.) *First*, unlike subsection VII.A.4, subsection V.C.4 provides no direction on the form an inmate must use. And subsection VII.A.4 proves the DOC knows how to specify the form of submission when the process is unclear and a particular form is required. *Second*, unlike subsection VII.A.4, which states how to *initiate* a grievance before the ARA, subsection V.C.4 addresses how to *appeal* a non-response to a pending grievance to the ARA. Indeed, as Womble explained in his opening brief, the facility-level grievance form is irreconcilable with the relief he sought. (Blue Br. 37–39.) It conflicts with subsection V.C.4; it requires descriptions that make no sense on appellate review; it does not reference the ARA on the form; and it requires an attestation that is wrong if sent to the ARA. (*Id.*) In sum, the Court should reject Defendants' after-the-fact excuse challenging Womble's use of the grievance appeal form—the most obvious form applicable here.

**2.** In passing, Defendants also suggest Womble "did not request relief in any grievance that would remedy the particular claims in this

action." (Red Br. 13.) This argument cannot be squared with Womble's RTSs and grievances to Defendants Chrisman and Sharp. Among other relief, Womble specifically asked that Defendants:

- "Transfer or release excess inmate population, or request funds for construction of new cell block, request bigger food budget, install more working toilets [and] showers . . . ." (*Id.* at 322.)
- "Release or transfer excess inmates." (*Id.* at 324, 326, 335.)
- "Please transfer or release excess inmates to correct law violations due to overcrowding." (*Id.* at 333.)

This requested relief was causally tied to the violations Womble alleged: "This facility is overcrowded. . . . My right to nutritious food, airflow, and a health hab[ilitative] environment have been encroached upon by the stackin[g] of inmates in dayrooms, libraries, and TV rooms." (*Id.* at 335–36.) Had Defendants meaningfully responded, it could have remedied Womble's specific complaints. But they didn't. In the end, Defendants cannot credibly argue they lacked notice of how to constitutionally respond to Womble's complaints. *See Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) (requiring notice pleading unless grievance policy requires a heightened standard), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).[4]

---

[4] DOC policy only requires inmates to state "[t]he action you believe the reviewing authority may lawfully take." (App. Vol. 2 at 335 (grievance form); *see also id.* at 200 (referring to grievance form).)

**B.    If another DOC form was required, the ARA's vague and non-substantive response made any administrative remedy unavailable.**

Of course, if the ARA thought Womble submitted the wrong form to raise the non-response of a grievance, it could have easily directed Womble to correct the submission by raising the non-response through the facility-level grievance form: the Offender Grievance Report Form. Instead, the ARA offered: "**YOU CANNOT APPEAL A NON-RESPONSE. REFER TO OP-090124 SECTION V.C. FOR GUIDANCE.**" (*Id.* at 340.) For Womble, who thought the correct process for raising a non-response with the ARA was to submit a grievance *appeal* form to the ARA, this response reads as if he was barred from raising the non-response of a grievance with the ARA. But subsection V.C.4 states otherwise, so any reference back to the policy provided no guidance at all.

And, if the ARA believed the form of Womble's submission was incorrect, why didn't it instruct him how to correct the deficiency, or, in the least, tell him he submitted the wrong form? Near about any other response would have been more helpful. Indeed, a simple response stating, "You submitted the incorrect form. Resubmit your request on the Offender Grievance Report Form (DOC 090124A)," would have sufficed. The ARA's form response letter includes a "wrong form" option, indicating the ARA regularly instructs inmates on how to correct the form of submission. (*See id.* ("24. Your appeal must be written on the

11

Misconduct/Grievance Appeal form (DOC060125V [] effective [] 10/12).").) Rather than fess up to the ARA's ambiguous and confusing response, Defendants seek to exploit it—five years after the fact.

A fair read of subsection V.C.4—particularly a pro se inmate's read—does not foreclose the use of the DOC's grievance appeal form to raise the non-response of *a grievance* with *the ARA*. If the ARA believed otherwise, it had both the apparent knowledge and opportunity to say so. The ARA's vague denial, along with subsection V.C.4's text, left Womble without an administrative remedy and rendered proper exhaustion unavailable. (*See* Blue Br. 41 (collecting cases).)

## III.   [Issue 3] Summary Judgment for Defendants was Premature and Improper Under Rule 56(d).

Defendants do not defend the district court's failure to address the Rule 56(d) declaration. Nor do they deny that at least one district court in Oklahoma has found "the issue of problems caused by overcrowded and understaffed prisons was deemed 'not an issue grievable to Oklahoma Department of Corrections'"—that is, no administrative relief exists for such complaints under DOC policy. *See Savage v. Fallin*, No. CIV-15- 1194-HE, 2017 WL 9802856, at *8 (W.D. Okla. Nov. 29, 2017), *report and recommendation adopted in part, rejected in part*, No. CIV15-1194-HE, 2018 WL 1558281 (W.D. Okla. Mar. 30, 2018). Rather, Defendants zero in on the Court's third *Valley Forge* factor and attack Womble's efforts to obtain discovery while Defendants' second pre-

answer motion for summary judgment was pending. Defendants are wrong on both the procedure and the substance.

After this Court issued its mandate in *Womble I*, Defendants moved to stay the case and for leave to file a supplemental *Martinez* report. (App. Vol. 2 at 171.) At the same time they filed their supplemental report, Defendants filed a second pre-answer motion for summary judgment. (*Id.* at 251.) No discovery had been conducted at that time because the case had not (and still has not) passed the pleading stage. In response to Defendants' motion, counsel for Womble filed a Rule 56(d) declaration to alert the district court that pre-discovery summary judgment was improper and to identify the evidence needed to respond to Defendants' arguments.

**1.** On the procedure, Womble was right. The purpose of Rule 56(d) is to notify the district court that summary judgment cannot be granted without first giving the nonmovant an opportunity to elicit discovery on facts necessary to respond the motion. The Rule 56(d) declaration did that by identifying facts necessary to contest Defendants' conclusory statements that administrative relief was available to Womble. This included discovery on the DOC's and the MACC's guidance on answering RTSs and grievances raising issues related to overcrowding; the responses to RTSs and grievances made by other inmates raising similar issues; and the DOC's retention policy and practices for complaints, RTSs, grievances, and grievance appeals. (*Id.* at 343,

13

¶¶ 13.a–c.) To this day, the government is silent on whether the DOC had a no-grievance policy for issues related to overcrowding.

Despite Womble's Rule 56(d) request, the district court granted summary judgment to Defendants without reference to the declaration. Defendants' attempt to defend that decision by imposing additional obligations beyond those in the rule is misguided. (*See* Red Br. 20 (suggesting Womble should have sought an extension to respond to the motion for summary judgment or a stay of proceedings).)

**2.** On the substance, Defendants are wrong that "Womble did not actually attempt to get any of the information he claim[ed] [wa]s necessary" to respond to the motion for summary judgment. (*Id.*) When Defendants suggested Womble could have sought discovery while their pre-answer motion was pending (App. Vol. 2 at 353), Womble's counsel contacted Defendants' counsel to schedule a Rule 26(f) conference (*id.* at 379), which is a prerequisite to discovery in a counseled case.[5] *See* Rule 26(d) ("A party may not seek discovery *from any source* before the

---

[5] Defendants are wrong that no Rule 26(f) conference was required because Womble first filed this case (seven years ago) as a pro se inmate. Womble obtained pro bono counsel before the obligations outlined in Rule 26 triggered; thus, the case must be treated as any other counseled case for purposes of initial disclosures, Rule 26(f), and Rule 26's other provisions. *See, e.g.*, *Meneweather v. Powell*, No. C 07-4204 SBA (PR), 2011 WL 13209593, at *1 (N.D. Cal. Dec. 13, 2011); *Vincent v. Stewart*, No. C16-5023-RBL, 2020 WL 59870, at *11 (W.D. Wash. Jan. 2, 2020), *report and recommendation adopted*, No. C16-5023RBL, 2020 WL 59531 (W.D. Wash. Jan. 6, 2020).

parties have conferred as required by Rule 26(f) . . . ." (emphasis added)). The Rule 26(f) conference in turn triggers initial disclosures. Rule 26(a)(1)(C). Despite Defendants' earlier discovery overture, they refused a Rule 26(f) conference and refused to exchange initial disclosures, both predicates for discovery. (App. Vol. 2 at 373–79.) Womble moved to compel a conference and initial disclosures (*id.* at 362), but the court summarily denied the motion (*id.* at 394).

In truth, and as Defendants confirm on appeal, they intended to oppose discovery all along. (*See* Red. Br. 5.) Thus, the suggestion that "[Womble] could have issued discovery" was hollow and only a means to attack Womble's request under Rule 56(d). (*See* App. Vol. 2 at 353.) The only way Womble was going to get the discovery necessary to respond to Defendants' summary judgment arguments on "availability" was for the district court to order it as a pre-condition to ruling on Defendants' motion. Womble requested such relief in the Rule 56(d) declaration consistent with the rule and *Valley Forge*, but the district court never acknowledged the declaration before granting Defendants' pre-answer motion for summary judgment. That was error.

## IV. Defendants' Alternative Grounds for Affirmance Are Mired in Fact Issues and Cannot Support Summary Judgment.

### A. Womble's competent evidence creates fact issues on whether Defendants were deliberately indifferent in violating his Eighth Amendment rights.

As an alternative ground for affirmance, Defendants take the extraordinary step of asking the Court to disregard a prior panel's holding that Womble adequately pled two Eighth Amendment claims for food deprivation and inadequate facilities. (Red Br. 23.) To do so, Defendants use a procedural sleight of hand: deny Womble discovery, repeat their Rule 12(b)(6) arguments in a Rule 56(a) motion, and then argue Womble cannot marshal evidence of a constitutional violation.

Despite seven years of litigation and multiple pre-answer dispositive motions, this case is still in the pleading phase. Defendants have not answered the amended complaint, they have refused to exchange initial disclosures and participate in a discovery conference, and they have denied efforts to conduct discovery. Yet, Defendants ask the Court to grant summary judgment because there is "no evidence" of a constitutional violation. Defendants are wrong, and, if reached, the Court should summarily reject Defendants' argument.

*Defendants' use of* **Martinez**[6] *and pre-answer motions.*
"Courts order . . . *Martinez* report[s] not to provide discovery, but to aid in *screening the complaint*." *Rachel v. Troutt*, 820 F.3d 390, 396 (10th

---

[6] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (en banc).

16

Cir. 2016) (emphasis added). The screening of Womble's amended complaint has already occurred, and this Court held Womble pled two constitutional claims against Defendants. *See Womble v. Chrisman*, 770 F. App'x 918, 921 (10th Cir. 2019) (unpublished).

The use of *Martinez* reports at the summary judgment phase is limited. The Court has warned that "the district court may treat the *Martinez* report only as an affidavit and may not accept its statement of facts if plaintiff has presented conflicting evidence." *Maberry v. Stotts*, 17 F.3d 1437 (10th Cir. 1994) (unpublished). The Court has also recognized the disparity in the type of evidence an inmate is likely to present: "A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

On remand from this Court, the government immediately moved to stay and for leave to supplement its *Martinez* report. (App. Vol. 2 at 171.) This was an overt attempt to bolster Defendants' attack on the allegations in Womble's amended complaint the Court found determinative in reversing the district court's earlier dismissal order. The supplemental report was the *only* evidence Defendants offered in support of their motion for summary judgment.

As an inmate, Womble had access to little to no information other than his own account of the events leading to this suit. Thus, in

17

opposing summary judgment, Womble submitted a 57-paragraph declaration, recounting in exacting detail the factual bases for his two constitutional claims. (*Id.* at 309–20.) Defendants do not acknowledge Womble's declaration, let alone argue why the declaration is insufficient to create issues of material fact.

The Court should reject the government's unfair practice of avoiding discovery, filing a pre-answer motion for summary judgment, and arguing the inmate cannot contest the evidence in the *Martinez* report. At bottom, Womble's declaration and the *Martinez* report are evidentiary equals. And, as explained next, review of the evidence shows the material facts surrounding the constitutional violations, and what Defendants knew at the time, are in sharp dispute.

***Objective component of the Eighth Amendment.*** In clear terms, the Court in *Womble I* stated that:

> Womble alleged that he was continually served inadequate amounts of food, that he was served spoiled food on a regular basis, and that he became ill and lost 21 pounds between May 2014 and September 2015. . . . [W]e conclude that Mr. Womble has alleged a sufficiently serious deprivation to survive a motion to dismiss because the rationing lasted more than 16 months, he lost 21 pounds, and he suffered from stomach pain, digestive damage, and vomiting.

770 F. App'x at 924–25. For the inadequate-facilities claim, the Court added, "Womble's allegations that he had to hold bowel movements and that he was exposed to feces are enough at this stage to show a sufficiently serious threat to his physical and mental wellbeing." *Id.* at

925. Defendants dispute this by claiming there is "no evidence" of these constitutional violations. (Red Br. 24–26.)

**1.** For the food-deprivation claim, Defendants state they did not ration food, citing their own three-sentence affidavits as support (Supp. App. Vol. 1 at 206, 208), and dispute the level of harm caused by Defendants' rationing and serving spoiled food. *First*, Womble has offered competing facts that Defendants *did* ration food. When 128 inmates were transferred to the facility, Defendants sent food-plan instructions to the MACC's food-services manager. (App. Vol. 2 at 314, ¶ 32.) Defendants directed food services to reduce the portion sizes rather than purchase more food. (*See id.*) And Womble and other inmates observed the smaller portions. (*Id.* ¶ 33.) One example of meals served was "for breakfast, eight ounces of gravy, two one-ounce biscuits, and four ounce[s] of oatmeal; for lunch, one two-ounce roll and thin slices of bologna; and, for dinner, one four-ounce chicken patty and one two-ounce roll."[7] (*Id.* ¶ 34; *see also id.* ¶¶ 35–36.)

*Second*, Womble's declaration explained the harm he experienced because of Defendants' rationing policy. He lost seventeen pounds in four months due to Defendants' policies, which caused "stomach pain, digestive damage, and vomiting." (*Id.* ¶ 40.) Womble even cited evidence

---

[7] Such meals equate to approximately 1,650 total calories. The recommended daily intake for a male inmate is 2,400 to 2,800 calories. *See* Alysia Santo & Lisa Iaboni, *What's in a Prison Meal?*, The Marshall Project (July 7, 2015, 7:20 A.M.), https://bit.ly/3s4j1nC.

in the *Martinez* report confirming he sought services for "bad stomach pain and vomiting." (*Id.* (citing Supp. App. Vol. 2 at 396).)

**2.** For the inadequate-facilities claim, Defendants argue generally that bathroom and shower facilities were available to Womble and that they were well-maintained. This cannot be reconciled with Womble's account. Womble explained the facilitates were overwhelmed due to additional inmates being packed on the unit (*id.* ¶¶ 43, 46); in disarray because of clogged drains, overflowing toilets, exposed wiring, and garbage (*id.* at ¶¶ 46, 47, 53); and often out of order because of delayed maintenance and recurring problems (*id.* ¶¶ 46–48, 53). Womble suffered real and measurable injuries from regular exposure to urine, feces, and mold. (*Id.* ¶¶ 52, 54.)

***Subjective component of the Eighth Amendment.*** The Court in *Womble I* also held that Womble's allegations "show that Mr. Sharp and Mr. Chrisman knew 'of and disregard[ed] an excessive risk to inmate health and safety.'" *Womble*, 770 F. App'x at 924. Specifically, that Womble "informed [Defendants] of the serious problems, yet they responded that they did not have the budget to fix them," and that "[Defendant] Sharp dismissed Mr. Womble's concerns . . . telling Mr. Womble he should be grateful to even get food." *Id.*; *see also id.* at 925 (noting Womble "informed [Defendants] of the issue with the bathroom" and "they dismissed his request" and concluding the allegations "are

sufficient to support the inference that [Defendants] knew of but disregarded the risks posed by the bathrooms").

In his declaration, Womble added to the allegations in his amended complaint. Womble stated that he informed Defendants of the food and facilities problems through the facility-grievance process (App. Vol. 2 at 311–14, ¶¶ 17–29); he specifically talked to Defendants about the rationing, spoiled food, and inadequate facilities (*id.* ¶¶ 38, 49); captains and lieutenants complained to Defendants and informed them that their policies were causing inmate hunger (*id.* ¶ 39); and Defendants regularly toured the facilities and participated in health inspections and therefore were on notice of the severity of the circumstances at the MACC (*id.* ¶ 56).

Defendants are simply wrong that "[t]here is no evidence that Womble addressed his specific concerns about inadequate food service or inadequate facilities to either Defendant." (Red. Br. 26.) And, that there's "[n]othing in the record, even taken in the light most favorable to Womble, indicat[ing] that Defendants Sharp or Chrisman knew of any particular risk to Womble or that they disregarded any such risk." (*Id.*) Womble's evidence, along with circumstantial evidence, *see Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."), is enough to create fact issues over whether

Defendants were deliberately indifferent in denying Womble constitutionally adequate food and facilities.

In the end, Womble's declaration substantiates the allegations the Court in *Womble I* held violate the Eighth Amendment. Defendants provide no argument on appeal for why an appellate court should usurp the role of the jury and decide fact issues by elevating the government's impartial *Martinez* reports over Womble's declaration.

***Rule 56(d) request.*** Even more, Womble argued the district court must allow discovery under Rule 56(d) before granting summary judgment on Defendants' "no evidence" arguments. (*See* App. Vol. 2 at 300–01; *see generally id.* at 341–46.) At a minimum, Womble must be able to conduct discovery on the "substitutions" made to the regular food menu due to "Fiscal/Budget Constraints" (*id.* at 300);[8] what alternatives were available to Defendants while they rationed food, including foods grown and raised through the DOC's Agri-Services Division (*id.*); the state of the facilities during the time in question (*id.* at 300–01); and Defendants' mental states, including through

---

[8] DOC policy required Defendant Chrisman to monitor menu substitutions through form production schedules. (*Id.*) Defendants, however, omitted these production schedules from the *Martinez* reports. Indeed, the writer of the original *Martinez* report "was unable to verify" that the production schedules exist. (*Id.*)

depositions (*id.* at 301). Womble's Rule 56(d) objections therefore also preclude summary judgment at this stage of the litigation.

### B. The Eighth Amendment rights Womble alleged Defendants violated are clear and well-established in this Circuit and others.

The district court did not rule on Defendants' qualified-immunity defense. Yet, on appeal, Defendants ask the Court to find that the constitutional rights at issue are not clearly established. (Red. Br. 29–31.) The Supreme Court has stressed "that lower courts 'should think hard, and hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). This is particularly true when the district court did not address qualified immunity below. *See Ashaheed v. Currington*, --- F.4th ----, 2021 WL 3502621, at *10 n.15 (10th Cir. Aug. 10, 2021).

The law is "clearly established" if a reasonable official would understand what he or she is doing is unlawful. *Wesby*, 138 S. Ct. at 589. Generally, the plaintiff must point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)). But "not every constitutional violation has factual antecedents," *Colbruno v. Kessler*, 928 F.3d 1155, 1165 (10th Cir. 2019), and the

23

qualified-immunity analysis is not a "scavenger hunt for prior cases with precisely the same facts," *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, courts may "rely on the general proposition that it would be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted . . . even though existing precedent does not address similar circumstances.'" *Colbruno*, 928 F.3d at 1165 (quoting *Wesby*, 138 S. Ct. at 590).

Initially, the Court must disregard Defendants' misframing of Womble's claims. The panel in *Womble I* already defined the constitutional claims Womble alleged: food deprivation based on sustained rationing and serving spoiled food for 16 months causing severe weight loss and stomach pain, digestive damage, and vomiting; and inadequate facilities based on having to hold bowel movements and having regular exposure to others' feces and body fluids. *Womble*, 770 F. App'x at 925. That Defendants refuse to recognize the problems at the MACC (Red Br. 30, 31), and instead attribute Womble's material decline and injuries to mere "confusion" and routine prison life (*id.*), is disingenuous and at odds with Womble's declaration.

The first step of any qualified-immunity analysis is to determine "what actually happened." *Gonzales v. Duran*, 590 F.3d 855, 859 (10th

24

Cir. 2009). When a court cannot complete its inquiry "without first determining disputed material facts," *Maestas v. Lujan*, 351 F.3d 1001, 1010 (10th Cir. 2003), because the facts are in sharp dispute and intertwined in the law, fact issues give rise to a jury question, *id.* at 1008. *See also Gonzales*, 590 F.3d at 859. The Court should decline Defendants' invitation to find facts in ruling on their qualified-immunity defense for the first time on appeal.

    ***Food deprivation.*** It has long been the law in this Circuit that prison officials must provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980); *see also Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). To incarcerate, the government takes away from a person the means to provide for his or her own needs, including adequate food, clothing, shelter, medical care, and reasonable safety. Because of this, the Supreme Court has repeatedly said that prison officials must provide inmates with "the minimal civilized measure of life's necessities"—including nutritionally adequate food. *See, e.g.*, *Farmer*, 511 U.S. at 834.

    Defendants sidestep this clearly established right by arguing that *the test* for what constitutes a "substantial deprivation" is not defined in this Circuit. But this is irrelevant. Womble's claim is not on the margins, requiring a precise test for what constitutes a substantial

deprivation. Indeed, the Court in *Womble I* said while "no published Tenth Circuit cases address with specificity what constitutes a substantial deprivation of food, other circuits have provided a rubric." *Womble*, 770 F. App'x at 923. And the clear weight of authority is that regularly depriving an inmate of adequate food for a sustained period violates clearly established rights. *Id.* at 923–24 (collecting cases).[9]

Because of Defendants' rationing policy, Womble was served inadequate daily servings for months, causing him to become ill and lose ten percent of his body weight. *See id.* at 923. An example of a daily meal served for dinner was one four-ounce chicken patty and one two-ounce roll. (App. Vol. 2 at 315, ¶ 34.) Not only were the food portions meager, but, because of Defendants' policies, food services served spoiled meat, fruit, and milk on a regular basis. (*Id.* ¶ 37.) If *Ramos* is to have meaning, regularly serving paltry portions and spoiled food for months clearly violates the command that inmates be served "nutritionally adequate food . . . prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates." *Ramos*, 639 F.2d at 570–71.

***Inadequate facilities.*** Defendants do not dispute it is clearly established that "a state must provide an inmate with shelter which does not cause his degeneration or threaten his mental and physical

---

[9] (*Accord* App. Vol. 2 at 303–04 n.10 (collecting cases from the Second, Fourth, Fifth, Seventh, and Eighth Circuits).)

well being." *See id.* at 568. Nor do they dispute the acuity of this right when inmates are exposed to human waste. "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). For this reason, "a reasonable prison official would have known at the time that it was improper to expose prisoners to such unsanitary, offensive conditions." *Id.*

Defendants cite no contrary authority, nor do they attempt to distinguish this precedent. Nor do they dispute that Womble's version of the events, believed as true, violates clearly established constitutional rights. Rather, Defendants argue "[t]here is no evidence that Defendants violated [Womble's] Eighth Amendment rights by failing to provide adequate sanitation or utilities." (Red Br. 31.) They make this claim without a single reference to Womble's declaration, which explains precisely how Defendants violated his right to shelter that does not cause his degeneration or threaten his mental and physical well-being. (*See supra* pages 18 to 23.) All Defendants have done is highlight the remaining fact issues material to Womble's claim.

## CONCLUSION

Womble asks the Court to REVERSE the district court and REMAND the case for further proceedings. Defendants' exhaustion defense was untimely, and Womble exhausted the available

administrative remedies. If the Court disagrees, it should still REVERSE the district court and REMAND with instructions to order limited discovery consistent with Rule 56(d). Finally, if the Court affirms, it should REMAND with instructions to the district court to DISMISS Womble's claims *without prejudice*.

Dated: August 17, 2021                    Respectfully submitted,

                                          *s/ Julian R. Ellis, Jr.*
                                          Julian R. Ellis, Jr.
                                          Bridget C. DuPey
                                          BROWNSTEIN HYATT
                                            FARBER SCHRECK, LLP
                                          410 17th Street, Suite 2200
                                          Denver, CO 80202
                                          (303) 223-1100
                                          jellis@bhfs.com;
                                          bdupey@bhfs.com

                                          *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains **6,363** words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: August 17, 2021.

_s/ Julian R. Ellis, Jr._
Julian R. Ellis, Jr.

## CERTIFICATE OF SERVICE

I certify that on August 17, 2021, I electronically filed the Reply Brief with the Clerk of the Court for the U.S. Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify the seven printed copies of the Reply Brief will be delivered to the Clerk of Court, U.S. Court of Appeals for the Tenth Circuit, Byron White U.S. Courthouse, 1823 Stout Street, Denver, Colorado 80257-1823, for delivery to the Court within five business days of the Court issuing notice the filing has been accepted.

Dated: August 17, 2021.

*s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.